ALICE S. THOMPSON et al., Appellants, v. WILLIAM J. LANGAN et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted November 15, 1912. Opinion Filed March 1, 1913.

1. BUILDING RESTRICTIONS: Carrying on Business: Hotels. A restriction in a deed to a city lot that no "business" shall be conducted thereon precludes the building of a hotel.

2. ———: Effect of Change of Neighborhood. The fact that, immediately adjacent to, but outside of, a district where there were building restrictions, business had grown up and the neighborhood had changed, would not have the effect of putting an end to the restrictions.

3. ———: **Dwelling House: Flats.** A restriction in a deed to a city lot that but one "dwelling house" shall be built on such lot precludes the building of a tenement or flat building containing several apartments.

4. ———: **Abandonment: Estoppel.** In an action to enjoin the violation of building restrictions, a defense that the plaintiffs had permitted other violations of a similar nature is one of abandonment, and not one of estoppel.

5. ———: **Abandonment.** The mere fact that two flat buildings, covering four lots out of one hundred and fifty in a district subjected to building restrictions excluding such structures, were erected eight or ten years before an action to enjoin other like violations was commenced, and at a time when none of the present lot owners had purchased, does not show such an abandonment of the restrictions as will preclude the present owners from maintaining such action.

6. **APPELLATE PRACTICE: Form of Decree: Action to Enjoin Building Restrictions.** In an action to enjoin the erection of a building in violation of building restrictions, the appellate court, upon holding that an injunction should issue, reversed a judgment for defendant and remanded the cause with directions to allow defendant a reasonable time to change that portion of the building already erected, so as to make it conform to the restrictions, if possible to do so, and in the event of his failure to so change such building, to order that it be removed.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

REVERSED AND REMANDED (*with directions*).

*Perry Post Taylor* and *Emil Mayer* for appellants.

(1) The trial court erred in rendering a decree for defendants and dismissing plaintiff's bill because it was clearly proved that the lots in question were subject to restrictive covenants which defendants had violated and were intending to continue to violate. Sanders v. Dickson, 114 Mo. App. 229; Godfrey v. Hampton, 148 Mo. App. 157; Semple v. Schwarz, 130 Mo. App. 65; Ketchen v. Hawley, 150 Mo. App. 497;

172 Mo. App.—5

Spahr v. Cape, 143 Mo. App. 114; Noel v. Hill, 158 Mo. App. 426; Compton Hill Imp. Co. v. Strauch, 162 Mo. App. 76; King v. Trust Co., 226 Mo. 351; Litchfield v. Boogher, 238 Mo. 472; Hall v. Wesster, 7 Mo. App. 56; Meriwether v. Joy, 85 Mo. App. 634. (2) Defendants are chargeable with notice of the restrictive covenants and are bound by the terms thereof. King v. St. Louis Union Trust Co., 226 Mo. 351; Litchfield v. Boogher, 238 Mo. 472; Noel v. Hill, 158 Mo. App. 426. (3) To erect an apartment house on defendants' lot in question, would clearly violate the restrictive covenant which prohibits the erection of "more than one dwelling on each fifty feet" of ground in Hamilton Place; and the court erred in failing to enjoin the defendants from violating said covenant. Sanders v. Dickson, 114 Mo. App. 229; Godfrey v. Hampton, 148 Mo. App. 157. (4) The evidence showed that the defendants proposed to erect and maintain a hotel on the lots in question. The court therefore erred in failing to enjoin such proposed action, because to erect or conduct a hotel on those lots would violate the restrictive covenant which prescribes that no "trade nor business shall be conducted on or permitted to exist on said premises." The conduct of a hotel is a business. Semple v. Schwarz, 130 Mo. App. 65; Kitchen v. Hawley, 150 Mo. App. 497; Noel v. Hill, 158 Mo. App. 426. (5) Even if, as contended by defendants, the plaintiffs should be estopped because the erection of apartment houses, in Hamilton Place, had been acquiesced in, yet the violation of that particular restrictive covenant would not debar the plaintiffs from their rights to enforce an entirely distinct covenant; namely, that which forbids any business to exist or be conducted on the restricted lots. The proposed hotel would violate that covenant. Lattimer v. Livermore, 72 N. Y. 174. (6) The plea that plaintiffs are estopped from asserting their rights, because without active opposi-

tion of the lot owners of Hamilton place, flats or apartments have been erected and maintained in the subdivision, is not available to these defendants. Spahr v. Cape, supra; Compton Hill Imp. Co. v. Strauch, 162 Mo. App. 76; Rowland v. Miller, 22 L. R. A. 182; Levy v. Halcyon Casino Co., 92 N. Y. Supp. 231; Lattimer v. Livermore, 72 N. Y. 174; DuBois v. Darling, 44 N. Y. Super. Ct. 436; Dexter v. Beard, 7 N. Y. Supp. 11; Fete v. Foerstel, 159 Mo. App. 75. (7) Estoppel is not available to defendants unless all of the following elements concur: (a) A false representation or a concealment, by plaintiffs, as to material facts. (b) As to such facts, knowledge by plaintiffs and ignorance on the part of defendants. (c) Intention by plaintiffs that defendants should act, and inducement of defendants. (d) Injury to defendants by such false representation or concealment. In this case, there is present, as the proof shows, not even one of these necessary elements. Blodgett v. Perry, 97 Mo. 263; Taylor & Mason v. Zepp, 14 Mo. 482; Gray v. Gray, 83 Mo. 106; Conrad v. Fisher, 37 Mo. App. 352; Brinkerhoff v. Horn, 83 Mo. App. 114; Greer v. Zinc Co., 103 S. W. Rep. 151; Spahr v. Cape, supra; 16 Cyc. 744, 791. (8) Defendants, particularly, are in no position to plead estoppel. It was equally the duty of themselves, and of their predecessors in title to the lots in question, to prevent the violation of the restrictive covenants. To suffer them by estoppel pleaded as against these plaintiffs to violate these restrictive covenants because the plaintiffs failed to take same actions against other violators thereof, when it was equally the duty of defendants to take such action, would be grossly inequitable. Defendants cannot complain of a breach, in which they, or their grantors, acquiesced, in order to justify their own breach of the restrictive covenants. Lattimer v. Livermore, 72 N. Y. 174. (9) Defendants are bound by the solemn covenants of the deeds under which their predecessors took title to the property and

they cannot now be heard to repudiate those cove-
nants. Hall v. Wesster, 7 Mo. App. 56; Spahr v. Cape,
supra; Compton Hill Imp. Ass'n v. Strauch, supra;
King v. Trust Co., supra; Litchfield v. Boogher, su-
pra. (10) The property in question was originally
subdivided for residence purposes. There has been
no change in it such as to render it unsuitable for that
purpose. Such being the case, the trial court erred
in failing to render a decree requiring obedience to the
restrictive covenants. Spahr v. Cape, 143 Mo. App.
114; Noel v. Hill, 158 Mo. App. 426; Brown v. Huber,
80 Ohio St. 183. (11) The trial court erred in failing
to order the removal of the structure which has been
partially erected on the lots in question. Meriwether
v. Joy, 85 Mo. App. 634; Improvement Ass'n v.
Strauch, 162 Mo. App. 86; Morrow v. Hasselman, 61
Atl. Rep. 369; Fete v. Foerstel, 159 Mo. App. 75. (12)
This court has the right to enter the proper decree
here.

*John P. Leahy* and *Vital W. Garesche* for respond-
ents.

(1) The court will not lend its aid to restrain
violation or for the specific performance of a restric-
tion, when it appears that such restriction was inserted
in deed as parcel and in pursuance of a general plan
of improvement, which has since been abandoned by
those in whose favor the covenant was executed, and
who are seeking to enforce same. Scharer v. Pantler,
127 Mo. App. 433; Bedford v. British Museum, 2 M.
& K. 552. (2) It would be inequitable to give plain-
tiffs the benefit of the covenant, which by their conduct
they have seen fit to treat as void and of no effect. It
is obvious that the doctrine is in the nature of an
equitable estoppel arising from the conduct of the com-
plaining parties, which appears tantamount to an im-
plied agreement, at least among them to the effect that

they would no longer abide the covenant. Coughlin v. Barker, 46 Mo. App. 74. (3) Where there has been a change in the neighborhood by the growth and extension of business houses, and by the erection of a railroad, the purposes for which easement was inserted in deed having failed, equity will not decree its enforcement. Duncan v. Railroad, 85 Ky. 525; Ewertson v. Gerstenberg, 186 Ill. 344; Peek v. Matthews, L. R. 3 Eq. (Eng.) 514. (4) Plaintiffs or their predecessors in title having stood by, and without objection having seen numerous breaches of restrictions committed by other parties in like condition with defendants, are in no position to invoke the aid of equity to enforce restrictions against defendants. Peek v. Matthews, supra; Jackson v. Stephenson, 156 Mass. 496; Ware v. Smith, 156 Mass: 186; Jenks v. Powlowski, 98 Mich. 110; Orne v. Frudenberg, 143 Pa. St. 487. (5) When the grantor specifies in detail the character of buildings to be prohibited, buildings of any kind not expressly excluded may be erected upon the property, and construing the covenant in question strictly in favor of the free use of the property, it did not prohibit the erection of a hotel thereon. Kitchen v. Hawley, 150 Mo. App. 497; Lloyd on Buildings (2 Ed.), par. 148; Hurley v. Brown, 44 Mo. App. 480. (6) The issuing of an injunction to prevent alleged violation of building restrictions is largely within the discretion of the chancellor. Scharer v. Pantler, 127 Mo. App. 437.

STATEMENT.—This suit was instituted by plaintiffs, appellants here, to enjoin the erection of an apartment house first, then of a hotel on two lots in Hamilton Place, the lots being numbers 1 and 2 of city block 4542 of the city of St. Louis, each lot fronting fifty feet on the south side of Von Versen avenue, by a depth of a hundred and thirty-five feet, the corner lot, lot number 1, being on the southwest corner of Von

Versen and Hamilton avenues. At the time of the institution of the suit, Mrs. Honora McGowan appears to have been the owner of both lots but since its institution she conveyed them to one Robert W. Bidwell, who afterwards conveyed them to William J. Langan, the latter holding the title in trust for Robert W. Bidwell and Mrs. McGowan. These were made defendants. Another defendant, Charles E. Bradley, is the trustee in a deed of trust given upon the property since the suit was instituted, while the defendant Thomas A. Bidwell, while interested in the property, as it is charged, as an owner, is the architect and contractor for the erection of the building proposed to be erected upon these lots. Mrs. McGowan died pending this suit, and her death being suggested, William J. Langan was made a party as executor of her estate, Margaret Langan also being made a party and she as well as the executor entered appearance without process.

On the 19th of November, 1909, defendant Thomas A. Bidwell, the contractor, took out a permit from the proper city officer of the city of St. Louis, for the erection of an apartment or tenement building on these lots. On the 23rd of November of the same year, plaintiffs caused a notice to be served, addressed to Mrs. McGowan and Thomas A. Bidwell and to all others interested in these lots 1 and 2, to the effect that protest was entered by the parties represented in the notice, some eighteen property holders in Hamilton Place, against the erection of an apartment building on the lots, further notifying them that if any work was continued on the proposed erection of such building, proceedings to enjoin its erection would be instituted in the circuit court of the city of St. Louis. On December 7, 1909, a notice of *lis pendens* was filed in the office of the recorder of deeds of the city, advising all parties interested in these lots that a suit had been or was to be filed in the circuit court of the

city of St. Louis, giving the nature of the suit. This suit was instituted on the 8th day of December, and afterwards, on the 17th of March, 1909, a second notice of *lis pendens* was filed to bring in all parties who had been brought into the case by amendment as parties defendant, an amended petition having been filed on the 16th of March, 1909. It further appears that at or about the time of the institution of this suit Thomas A. Bidwell amended the application for a building permit, by substituting a hotel for an apartment house, filing revised plans for that kind of a structure.

In the amended petition upon which the case was tried, it is set up that on January 2, 1887, one George W. Gray conveyed to Allemand and Nelson, as trustees for persons named in the deed, a tract of ground thereafter subdivided and known as Hamilton Place, with authority in the trustees to subdivide the same and dispose of the lots into which it might be subdivided; that afterwards, on the 24th of February, 1887, these trustees duly filed a plat of Hamilton Place, subdividing the property into streets, alleys, blocks and lots. As so laid off Hamilton Place was bounded on the north, in part, by Clemens Place and, in part, by what is called Clemens Place extension, on the south by Delmar avenue, on the east by Hamilton avenue, in part, and, in part, by Clemens Place extension, and on the west by what was then called Delmar but now Hodiamont avenue. Three streets extended through Hamilton Place, running east and west, the streets respectively Von Versen, Clemens and Cates avenues. It was separated from Clemens Place on the north by a "road," as it is called on the plat. The place extends for three hundred and thirty-two feet along Delmar, along Von Versen for about eleven hundred and twenty feet, along Clemens about thirteen hundred and seventy feet, along Cates about eight hundred and fifty feet, and along the road at the north about nine hundred and sixty feet. When we hereaf-

ter refer to Delmar avenue we are referring to that avenue as it is now known and designated, which lies to the south of Hamilton Place, and not to the old part of Delmar which ran along the western side of Hamilton Place between that and the Wabash Railroad Company's right of way. Hamilton Place as laid out, it is averred, was laid out as a high-class, restricted, residence district, and to carry out that intention the proprietors conveyed all of the lots in it, including those now belonging to plaintiffs and defendants, subject to certain restrictions: First, a building line was established, that along the north line of Cates avenue being thirty feet from that avenue; on the north and south lines of Clemens and Von Versen avenues, the building line was established at forty feet from the lines of those avenues, it being provided that no building or fence constructed of lumber more than two feet in height should be erected between these building lines and the line of the avenues. Second, no dwelling should be erected on any lots in the place whereof the main part was less than two stories in height, "nor shall there be erected more than one dwelling on each fifty feet of said realty except on lots fronting on the north line of Delmar avenue." Third, no stable, shed or other building could be erected within ten feet of the rear line of the lots until the alley was dedicated in the rear of them. Fourth, "no dairy, nor manufactory, nor trade, nor business, nor nuisance shall be conducted on or permitted to exist on said premises except on the lots fronting on the north line of Delmar avenue in said block No. 4542, which may be used for trade or business purposes, and business houses may be erected thereon." Fifth, it is provided that these conditions should continue in full force until the first day of January, 1920, "and any violation of the preceding conditions, stipulations and agreements or any part thereof by the grantee in any and each of such conveyances or by any person claiming or holding the

said premises, so conveyed, by, through or under such grantee may be prevented by injunction or other proper proceedings in court by any property owner in said Hamilton Place.'' It is further alleged in this amended petition that these conditions, stipulations and agreements mentioned were contained in each and every conveyance thereafter made by the trustees and by those deraigning title from them and their grantees; that each and every one of the conveyances subsequently made contained these restrictions and were duly filed of record and that each and every holder and owner, including plaintiffs and defendants, of each and every lot in Hamilton Place, had, when he purchased his lot, notice, actual and constructive, of all these conditions, stipulations and agreements above set forth, and it is averred that they are binding upon each and every one of them. It is further averred that defendants have purchased and are the owners and holders and interested either as owners or otherwise in these lots 1 and 2, of city block 4542, of Hamilton Place, and the ownership of plaintiffs of various lots in that place is averred, it being further averred that plaintiffs and other owners have erected handsome and valuable houses in which they reside on their respective lots, have purchased and improved their lots in reliance upon and have complied in all respects with the provisions and conditions of the deeds before mentioned. It is charged that defendants Robert Bidwell and Honora McGowan and defendant William J. Langan had purchased and held title to these lots subject to these conditions and that defendant Bradley, is trustee named in a deed of trust upon the property, which had been given since the institution of this suit to secure payment of notes held by parties unknown to plaintiffs, and that defendant Thomas A. Bidwell is interested in the property as owner, contractor and architect of the building mentioned, which he proposes and threatens to put up in violation of the re-

strictive covenants and conditions of the deeds and in defiance of the rights of plaintiffs and in disregard of the negative easements and of the covenants creating them, defendants are threatening and intending to erect, operate and maintain more than one dwelling on lot 1 and more than one dwelling on lot 2, and to change the frontage of those lots in this: That they threaten to erect, operate, conduct and maintain on these lots 1 and 2 a large three-story hotel, apartment or tenement building, containing seven separate dwellings on each floor thereof, or a total of twenty-one separate dwellings on said lots, six of them and parts of six others being designed and intended to stand upon and over lot 1, and nine of them and the remaining parts of the six others designed and intended to stand upon and over lot 2, the building being designed and intended to be used as a tenement and to be used by twenty-one separate and distinct entrances, and to front on Hamilton avenue instead of Von Versen avenue, as required by the restrictions as to these lots 1 and 2, and that defendants are intending and are threatening to create, operate and maintain a business and nuisance to be and exist upon these lots 1 and 2 in this, to-wit: That they are threatening to build, operate and conduct a hotel or tenement house or a row of tenements or flats thereon, and to conduct and operate and maintain thereon or therein a hotel business and the business of renting out such building or buildings and the apartments or rooms therein contained for hire, which is, or, if permitted, would be not only essentially a business enterprise, entirely subversive of the intent and purposes for which the subdivision was created and has been so far preserved, but a nuisance to these plaintiffs and to all the residents of Hamilton Place and to all the owners of property therein. Charging further that this contemplated erection is an invasion of the rights of plaintiffs and will cause great and irreparable damage and nuisance

Thompson v. Langan.

to them in the depreciation of value of their property and that the injury will be irreparable and continuing, unless restrained by the court, and that it will not be of such a character as will sustain an action at law and that it cannot be compensated for in damages, and averring that at the time this amended petition was filed no work had been done by defendants or either of them or by any of their contractors or subcontractors toward the erection of the above described building, except that some excavation had been made for the purpose of erecting said building and that since that time defendants, their contractors, subcontractors and agents have finished excavating for the building and have proceeded with the erection of the foundation thereof and a part of the brick work thereof, so that the building is now constructed up to the first floor, and that the construction of this building continued until on May 23, 1910, since which time no further work has been done thereon; that the structure covers almost entirely these lots 1 and 2, except that portion thereof north of the forty-foot building line, and that since the 23rd of May, 1910, work has apparently been abandoned in the erection of this building and building material has been left scattered on other parts of the lot and its present condition is unsightly and by its appearance is a damage to the other property in the subdivision and because of its unsightliness and neglected appearance, and because in its present condition it affords a lurking place for undesirable persons who may come into the neighborhood, it has become a nuisance and is furthermore in violation of the conditions and restrictions imposed on the lots, and averring that plaintiffs are remediless in any action at law, the facts as aforesaid being reviewable only in equity, an injunction is prayed for restraining defendants, etc., from erecting, conducting, operating or maintaining or causing to be erected, conducted, operated or maintained, a hotel, apartment

or tenement building on these lots 1 and 2, or of any other structure or building in violation of the terms and conditions and covenants of the deeds before referred to; that defendants be ordered and required to remove from the lots any portion of the proposed building which has already been erected or shall thereafter be erected thereon and for such other and further relief as in equity and good conscience they may be entitled.

The answer, after a general denial, sets up that Cates avenue is a public street in the city of St. Louis, running from Hamilton avenue on the east to Hodiamont avenue on the west, traversing part of the land situated in and forming a part of Hamilton Place; that on part of the land fronting on Cates avenue and between these boundaries above given, there have been erected and standing for a long period of time, by and with the knowledge of plaintiffs, and on land forming a part of Hamilton Place, certain flats or apartment houses; that each of the flats contains two separate flats and that each of them is erected upon a lot fronting fifty feet on Cates avenue in Hamilton Place, and that the fact of the erection of these flats was known to plaintiffs at the time said flats were erected. It is further averred that Clemens avenue is a public street of the city, running from Hamilton avenue on the east to Hodiamont on the west, and that on this avenue four flats or apartment houses have been erected, each containing two separate flats and each building erected upon a fifty foot lot on Clemens avenue, and that the fact of the erection of said flats was known to plaintiffs herein at the time these flats were erected; that on Von Versen avenue, a public street running eastwardly and westwardly from Hamilton on the east to Hodiamont on the west and within those boundaries crossing Hamilton Place, there have been erected and are now standing two flats situated immediately across the street from the lots 1 and 2, formerly owned by

Mrs. McGowan, upon which the building complained of in plaintiffs' petition is in course of erection; that each of these flat or apartment house buildings contain two separate flats and that each of these flats was erected on a lot having a front of fifty feet on Von Versen avenue and that the fact of their erection was known to plaintiffs at the time of their erection; that on the rear or northern part of the lot fronting on Von Versen avenue, upon which these flats have been erected, there has also been erected, and as now used, a separate dwelling fronting on Hamilton avenue. Defendants further state that none of the plaintiffs complained of the erection of the flats above described as being situated in Hamilton Place at the time of their being placed there, nor have the plaintiffs or any one of them complained of the flats being used in that subdivision since their erection; that they have been erected and used by and with the knowledge of plaintiffs for a long period of time, to-wit, for a period of ten years and that plaintiffs and each of them have acquiesced in and consented to the use, and that by such consent and acquiescence they were and are now guilty of laches and estopped from setting up and claiming the benefit and enforcement of the covenants of the restriction set out in the petition. It was further averred that the character of the neighborhood and of the improvements forming Hamilton Place and immediately around it have completely changed and altered since the establishment of the place and of the covenants and restrictions set out in plaintiffs' petition, in this: That a large number of flats or apartment house buildings have been erected in the subdivision and in the neighborhood immediately surrounding it and immediately across from the building complained of; that on Hamilton avenue on the east there have been erected two large apartment houses or buildings, one fronting on Hamilton avenue and the other on Von Versen avenue; that on Hamilton and Delmar avenues,

immediately in the rear of the land upon which the building complained of is in course of construction, there is situated a building designed and intended to be used and operated as a saloon, and that the building which defendants proposed to erect is not violative of any of the covenants of restriction before mentioned and will be an ornament and improvement to the neighborhood. It is further set up in the answer that the building contemplated is incomplete because of the fact and solely because of the fect of the pendency of this suit and of the attempts plaintiffs have made, directly and indirectly, to prevent defendants from making a building loan upon the premises for the purpose of completing the building, and finally, it is averred that by reason of the change in the neighborhood and of the property composing and forming Hamilton Place since it was created and the covenants of restriction established, if they were now enforced it would amount to confiscation of the property of defendants and it would not be equitable to enforce them against defendants in this suit.

This was replied to and the cause heard before the court who, after taking it under advisement, found for and entered a judgment in favor of defendants. From this plaintiffs have duly perfected their appeal.

Evidence was introduced by the several parties along the lines of the pleadings. It appears that no business building of any kind, or building in which any business was to be carried on, has ever been erected on any of the lots in Hamilton Place, excepting, however, along the line of Delmar avenue.

It was agreed between counsel that on lots 1 and 2 of block 4241, each having a front of fifty feet on the south side of Clemens avenue, two separate buildings have been erected, each containing four flats or apartments; that on lot 48, of block 4241, the northwest corner of Von Versen and Hamilton avenues, a flat or apartment building containing four apartments had

been erected, and in the rear of this lot, but fronting on Hamilton avenue, a small frame dwelling had been erected. These flats are directly opposite the corner lot of defendants, that is to say lot 1. These are testified to be the only flats in Hamilton Place and were erected while the conditions before mentioned were in force as to Hamilton Place.

A witness who had lived in the city about forty years and within the immediate vicinity of Hamilton avenue about twenty-two years, and who had been a member of the firm who handled the sale of the subdivision and disposed of the lots, testified that when these flats were erected the majority of plaintiffs did not even own the lots; that the lots in Hamilton Place had been transferred and retransferred before they got into the hands of the present owners, who had improved them, and that he did not believe any of the plaintiffs were living there at the time these flats were erected; that most of the houses in Hamilton Place have not been built to exceed five or six years. The flat buildings on the south side of Clemens avenue were erected about eight years ago and were the first buildings erected on that avenue. The apartment house on the northwest corner of Hamilton and Von Versen and the frame house in the rear, had been built about ten years before the trial.

Another witness testified that all the new buildings in Hamilton Place are brick, costing from $9500 up and mostly occupied by the owners. Some of the old dwellings are frame and in a good many places shade trees, shrubbery and flowers have been set out, the place having been improved and occupied with homes. There are flats and hotels on property adjoining Hamilton Place to the east and north and a street car track runs along Hamilton avenue the whole width of the place. The flats and hotels are in Clemens Place or Clemens Place extension, not in Hamilton Place, and are in what is generally called the Cabanne

district, but with the exception of the two flats before mentioned, no flats or buildings other than residences have ever been built in Hamilton Place save as before stated on the north side of Delmar avenue.

A witness testified that when the first of these flats, built some ten years ago, was put up, there had been some protest against it but before any action could be taken the building had reached over a story in height and the parties concluded that it was too late to attempt to do anything. Clemens Place and its extension had been under building restrictions but these restrictions, by the terms of the deeds creating them, expired in 1905, so that from that time on there have been no building restrictions in Clemens Place or its extension. There does not appear to have been any building restrictions on any of the property east of Hamilton avenue.

Hamilton Place is divided into about a hundred and fifty lots. On the plat in evidence the city blocks are marked as 4539, 4540, 4541 and 4542, but in the abstract these blocks are all referred to as 4239, 4240, 4241 and 4242. As we understand it they refer to the same blocks and the numbers have been used indiscriminately, whether by misprint or whether the numbers of the blocks in Hamilton Place are different from the numbers of the city blocks, we are not advised. The original projectors, or their trustees, after laying out Hamilton Place, sold a number of lots, some thirty-three, all conveyed under the restrictions to individual purchasers, and by deed recorded May 26, 1887, the trustees conveyed all of the remaining lots, about a hundred and seventeen, to one Culvin F. Collins. It is from Collins that the subsequent titles to all of these lots, including those of plaintiffs and defendants are deraigned.

While this is as brief a summary of the rather voluminous pleadings and evidence in the case as it is

possible to make, it is thought to be sufficient to present the points around which the controversy turns.

REYNOLDS, P. J. (after stating the facts).— We have no indication of the theory upon which the learned trial court disposed of the case, other than as afforded by a ruling that he made when a witness was being cross-examined by counsel for defendants, which appears in the abstract. That witness was asked whether a suit for injunction had been brought to enjoin the erection of the two groups of flats mentioned. This was objected to as immaterial, whereupon the court remarked: "Where you stand by and see restrictions of that kind repeatedly violated and make no effort to restrain them by law it practically wipes out the restrictions. He may answer that because they plead you were estopped by your conduct. I will receive it subject to the objection." To this plaintiff duly excepted.

The evidence shows that when the contractor, one of the defendants, acting for the owners, had taken out a permit for the erection of the building, it was then the plan to erect flats or apartment houses on these two lots; that afterwards this was changed and a permit taken out to erect a hotel and the contractor proceeded to do that. That this proposed building, if intended for flats or an apartment house, would have violated the restriction against erecting more than one dwelling on each fifty-foot lot, is clear. From six to nine distinct, separate "dwellings" or flats or apartments were proposed to be erected on the lots, with no line between corresponding to the line between the lots. If designed for a hotel and intended for the carrying on of the hotel business in it, while a single structure, that it was a violation of the restriction against the erection or maintaining of a building for conducting business therein, is also clear.

Either of these is in violation of the covenants in these deeds. As to the hotel, the question is settled, so far as our court is concerned, by what is decided in Kitchen v. Hawley, 150 Mo. App. 497, 131 S. W. 142. There the restriction against buildings, among others, was that no dwelling house less than two stories high could be erected thereon, and that not more than one such dwelling house could be erected on each fifty-foot front of the lot. Commenting on these restrictions, Judge NORTONI says, at page 504:

"But there is no word to be found in this provision which says that no building other than a dwelling house may be constructed. It is entirely clear that if dwelling houses are constructed on the property conveyed, then they must conform to the requirements above stipulated. The fourth subdivision inhibits the construction of any stable, shed or outhouse nearer than one hundred feet to a public driveway. The fifth subdivision is levelled against any nuisance, livery stable or manufacturing establishment of any kind. The words employed by the grantor with respect to these matters are general and sweeping, indeed, but they do not operate to prohibit a hotel, for such is not *per se* a nuisance, and, of course, not a livery stable, nor a manufacturing establishment. The sixth subdivision inhibits the construction or use of any grocery store, bar room or business place for the bargain and sale of any kind of merchandise. If this restriction were general in terms and levelled against any business place, of course, it would exclude a hotel, for such is a business place, in a way; but it is to be observed that the restriction is levelled against such business places only as they are occupied for the bargain and sale of any kind of merchandise; that a hotel is not such a business place is certain. The implication is clear that business places, other than grocery stores, bar rooms or such as are occupied for the bargain and sale of merchandise, are not within the terms of the

restriction; for such restrictions are to be construed
strictly in favor of the free use of property unless the
context of the instrument discloses an intention to the
contrary."

So far then as this suit seeks to enjoin the erection
of a building to be occupied and conducted as a hotel,
the petition sets out a good cause of action and the
evidence sustains beyond cavil the fact that the final
intention in the erection of this building was to erect
a building in which the business of hotel-keeping was
to be carried on. That the restricting against the erec-
tion of any building on the premises was intended to
be general and not particular—intended to inhibit any
and all kinds of "business" is made manifest from the
language employed as to the lots in Hamilton Place
fronting on Delmar avenue. As to those lots it is
expressly provided that buildings there erected might
be used for trade or business purposes and business
houses might be erected thereon. In so far then as
concerns the erection of a building to be used as a
hotel, there can be no question that a building for such
purposes cannot be erected as long as these negative
covenants are in force, that is, until the year 1920, and
as to that the learned trial court was in error in refus-
ing the injunction against its erection.

But it is claimed that the general plan upon which
Hamilton Place was laid out and the general object
of its creation had been abandoned and that conditions
in the neighborhood had changed, and that therefore,
all of the restrictions fell in. We considered both of
these questions in Spahr v. Cape, 143 Mo. App. 114,
122 S. W. 379, and again in Noel v. Hill, 158 Mo. App.
426, 138 S. W. 364. In the last named case, as here,
it was in evidence that on adjoining streets, and across
the same street, there were no restrictions, that there
were stores and shops across that and on streets run-
ning to the north of and bordering on the restricted
locality, the restricted section covering but one city

block; in short, that outside of the restricted district, business had grown up and the neighborhood had changed. We held in each of those cases, as in others referred to, that these facts did not put an end to the restrictions. We hold, on the application of those principles to the facts here, that the restrictions here invoked are not removed by reason of any change of conditions.

The next question for consideration is, whether the fact that flats or apartment houses have been erected on four of the lots within the boundaries of Hamilton Place and while the restrictions prohibiting more than one dwelling on each fifty-foot lot are in force, is an abandonment of that restriction and throws Hamilton Place open for construction of any kind of a building, no matter for what purpose designed. For if the contention of respondents is sound, that must be the result. It is true that respondents have, for the present, apparently, abandoned their original design of erecting an apartment house and were proceeding, when halted by the institution of this suit, to erect a hotel, but they claim that these flats or apartment houses having been erected and, so far as appears, without steps having been taken to prevent, the restriction confining the buildings to dwellings has been abandoned.

That an apartment house or flat is not a dwelling house, and that the erection of flats within the boundaries of Hamilton Place is in violation of the covenant providing that no dwelling shall be erected on said realty whereof the main part is less than two stories in height, nor shall there be erected more than one dwelling on each fifty foot of said realty, except on lots fronting on the north line of Delmar avenue, has, as we think, been settled by the decision of our court in Sanders v. Dixon, 114 Mo. App. 229, 89 S. W. 577. There our court had before it the restrictions in the deeds under which Clemens Place, the place or subdivision

immediately north of Hamilton Place, had been conveyed. Reading that case, it appears that the restrictive covenants are practically word for word as those now before us, the only material difference between them being that here the covenants are to run until 1920; there they ran to 1905. In a very carefully considered opinion by Judge Goode, it is held, all of the judges of our court concurring, that a covenant in a deed providing that the grantee shall not erect more than one dwelling on each lot conveyed, was violated by the erection of a flat or apartment house. In that case and after a consideration of all the authorities determining what is a dwelling house, the discussion commencing at page 247, Judge Goode, quoting the definition given of a dwelling by the Supreme Court of Illinois, in Hutchinson v. Ulrich, 145 Ill. 336, declines to follow that and like decisions and adopts that announced by the Supreme Court of New Hampshire in Gillis v. Bailey, 21 N. H. 149, as "the most apposite and best reasoned" of the cases in which a definition of the word "dwelling" had been attempted. In Gillis v. Bailey the covenant regarding the property was that only one single dwelling house, with sheds, barn and other outbuildings required for the use of the same should, for twenty years of the date of the conveyance, be placed on the lot. The purchaser built a house two stories in height, designed to accommodate three families but fitted up for and actually occupied by six families. The question in decision was the meaning of the phrase "single dwelling house," and it was decided, in effect, to mean a building intended and constructed for the use of one family. The Supreme Court of New Hampshire held that the structure actually erected was three separate and three distinct residences and dwellings and was in violation of and worked to defeat the purposes of the covenants. This decision of our court is conclusive as to the question that the erection of either apartments or flats, is in violation of the cove-

nant in these deeds against the erection of more than a single dwelling on one lot.

Counsel for respondents invoke the doctrine of estoppel. Cases of this character do not rest on estoppel, and it is clear that none of the elements of estoppel are here present. They must rest on the question of abandonment. That was the case, to illustrate, in Scharer v. Pantler, 127 Mo. App. 433, 105 S. W. 668. There a building line was imposed upon all the lots but with the creation of the place or laying out of the tract on which this building line was imposed, the creator, the party who instituted and inserted in her deeds the requirement of a building line, at one and the same time violated it by building over that line, erecting two houses within and nearer to the twenty-five foot line and the line of the street, placing them ten feet over this building line, and while in subsequent deeds she called for the building line of twenty-five feet, in point of fact, without objection from her or anyone else, parties built, following her buildings, ten feet over this twenty-five foot line. When another party subsequently undertook to go beyond this ten foot line and build closer to the street line, some of these parties who had themselves violated this building line, attempted to enjoin the construction, not merely beyond the ten foot line but against the original twenty-five foot line. Our court held, not that they were estopped by their action, but that the acts of the original grantor who had imposed the building line, and of her immediate grantees, showed conclusively that there was an abandonment of the restrictions *pro tanto,* that is so far as they prescribed a building line. That, not on the principle of estoppel but on the principle of abandonment.

These two sets of flats were built on four out of the one hundred and fifty lots in Hamilton Place, one set some ten years and the other eight years prior to the institution of this suit, and, as the testimony

tends to show, all of them erected some time before any of the present owners and residents in Hamilton Place had acquired any rights in it. The testimony is overwhelming that as to all of the numerous dwellings which within the past five or six years have been put up in Hamilton Place, each and all of the restrictions of the deeds as to the character of the buildings have been strictly complied with. Not only these present plaintiffs but all other owners and residents in the place, save those who put up the flats, have considered themselves bound by this restriction and limitation as to dwellings and have complied with it. On consideration of the facts here in evidence we are not prepared to hold that there was an abandonment of those parts of the covenants and restrictions contained in the deeds against the erection of more than one dwelling on each fifty foot lot. The vast majority of the owners in the place have observed them. Defendants purchased, took and hold their lots, recently acquired, with full knowledge of them. All of the parties claim under a common source of title; the restrictions are common to all of them; all purchased with notice of them, even the owners of the lots here in dispute. The deeds all appear to have been recorded, and as said by our Supreme Court in Litchfield v. Boogher, 238 Mo. 472, l. c. 478, 142 S. W. 302, following King v. St. Louis Union Trust Co., 226 Mo. 351, 126 S. W. 415, "a grantee in a deed creating an easement over the granted premises by its acceptance becomes bound by all its restrictions, reservations and exceptions. In other words, one who acquires title through a deed expressly reserving a right of way through the land is estopped by the deed from denying the existence of the right of way."

When defendants took their deeds to the premises, they surely knew that notwithstanding the presence of these flats on four lots, all the other owners in Hamilton Place regarded this restriction as in force; their

eyes told that; any, even the most casual, inquiry would have shown it. It would be against all fair conduct, against equity, to allow them to defeat all the other owners of lots in the place on such slight grounds. On the old maxim even, *sic utere tuo ut alienum non laedas,* they should be estopped from destroying the underlying idea upon which Hamilton Place was laid out; that is, to make it a place for homes, private dwellings, to the exclusion of business. We have no such case here as presented in Scharer v. Pantler, supra, in which it appears that the grantor, the very person who had imposed the restrictions by deed, herself disregarded the building line, by building outside of it, and this done practically contemporaneously with the imposition of that line by deed. If the doctrine of estoppel is to be invoked and applied here, it would seem that it arises as against defendants, not against plaintiffs. If one of the defendants is correctly quoted, when notified that he must not erect flats or a hotel on these lots, he said that if he was estopped from that he would roof the walls over, as then erected, and let the premises to objectionable tenants. The building was then about one story high. We are not inclined to believe that even if he said this, he said it seriously. To have roofed in such a building, would bring it in conflict with the restrictions which provide that no building less than two stories high should be erected on these lots.

We therefore hold that the decree in this case, in finding for defendants and dismissing plaintiff's case, is erroneous.

The judgment of the circuit court must be reversed and the cause remanded; remanded, not to try it again in the circuit court, for that is rarely done in suits in equity, but for the sole purpose of directing the proper form of decree to be entered.

We are confronted in remanding the case with a very serious problem as to what decree should be en-

tered by the circuit court. Plaintiffs asked that defendants be required to remove the present superstructure, fill up the excavation and remove the debris from the ground. We are not prepared to enter such an order or to direct the circuit court, on this record as now before us, to do so, not altogether for the reasons announced by our court in Sanders v. Dixon, supra, because we are confronted here with no such situation as was there present by reason of the expiry of the period of time over which the restrictions were imposed, but by one of the very practical questions there present, namely, it does not appear which of these defendants should be put to the expense and labor of removal. Furthermore, we are inclined to believe, on consideration of the case and as far as we are able to understand the condition of this building, that it may be within the power of the owner of the lots and of the contractor and builder or other parties in interest, to so remodel this building as to enable them to obtain the use, at least to some extent, of the work already done, and of at least some of the material now on the ground, and at the same time conform to the limitations and conditions to which under the deeds they hold.

We have therefore concluded to remand this case with directions to the circuit court to enter up judgment enjoining defendants or any of them from erecting or proceeding with the erection on the two lots described in the petition or on either of them, at any time prior to January 1, 1920, of an apartment house or a hotel or any building adapted or to be used for either such purpose or for any purpose other than a single dwelling. The circuit court is further directed to inquire into the practicability of a change in the plan of construction of the structure now on said lots, and if within a reasonable time, to be fixed by that court, the owners and contractors and builders of these proposed superstructures can so change their plan as to

proceed under and in compliance with the restrictions in their deeds that they should be given an opportunity to do so, the trial court retaining jurisdiction of the cause in order that it may see that whatever orders it makes are carried out in good faith and with reasonable promptness. If within the time specified by the court defendants, or whoever of them appear to be the responsible parties, fail and refuse to comply with the directions and orders of the trial court, it is then within the power, as it will be the duty, of the circuit court to order the cessation of all work on the present structure and to order its removal; the latter for the reason that to allow it to continue in its unfinished and unsightly condition would constitute the maintenance of a nuisance upon the property, that being in direct violation of one of the terms and conditions of the deeds.

The judgment of the circuit court is accordingly reversed and the cause remanded with directions to that court to proceed as herein indicated. *Nortoni* and *Allen, JJ.,* concur.

