FREDERIC W. STEVENS, EUGENE STEVENSON, EDMUND B. LEAM-
ING, VIVIAN M. LEWIS, JOHN H. BACKES, JOHN GRIFFIN,
JOHN E. FOSTER AND MERRITT LANE, VICE-
CHANCELLORS.

ALBERT H. PEARSON

*v.*

JOHN STAFFORD.

[Decided January 10th, 1918.]

1. A purchaser of lands within a tract subject to restrictive covenants is bound by them where he had at least constructive notice thereof.

2. That there had been over one hundred violations of the restrictions imposed did not defeat the right of a lot owner to enforce them against one about to build a structure that would interfere with the lot owner's free and unobstructed view.

3. Where complainant's hotel, erected on a lot subject to a covenant against building within twenty feet of the front property line, had been erected for years, and defendant's predecessors in title made no objection to a porch extending to the property line, and defendant himself made no objection except by way of answer in a suit brought to restrain him from violating the covenant, he could not be heard to object to the complainant's violation, especially when he had changed the plans of his own building to do the same thing the complainant did in violation of the restriction.

, On final hearing on pleadings and proofs.

*Messrs. Grey & Archer,* for the complainant.

*Mr. James H. Hayes, Mr. Ulysses G. Styron* and *Mr. Clarence L. Cole,* for the defendant.

WALKER, CHANCELLOR.

This is a suit to enjoin defendant from violating a building restriction. On the hearing of an application for a preliminary injunction the whole case was submitted upon affidavits and exhibits on both sides, and it was agreed by counsel for the respective parties that the cause should be submitted and decided as on final hearing. The record has been perfected by the filing of an answer and a replication to the end that that course may be taken. I have viewed the premises in question with representatives of each side as showers.

In 1883 the Chelsea Beach Company owned a large tract of land in Atlantic City and caused it to be laid out into blocks and lots and filed a map thereof in the Atlantic county clerk's office. This company, in making conveyances, subjected all lots to certain restrictive covenants. On August 22d, 1893, the company conveyed to Clement J. Adams the premises now owned by the complainant, who became seized thereof by deed from Von H. Herr, July 5th, 1916, who, Herr, had become seized thereof in virtue of sundry mesne conveyances. All of the conveyances affecting the premises were subject to the covenants and restrictions referred to. Complainant alleges that upon his property there has been erected, in strict conformity to the restrictions, a hotel known as the Hotel Gladstone.

By deed dated December 2d, 1915, John Stafford, the defendant, became seized of property facing on Brighton avenue and adjoining the complainant's property on the south. He has also become the owner of land adjoining the premises on the north, known as lots 126 and 132 on the Hemsley plan, lying between the premises he acquired by deed of July 5th, 1916, and Stenton place, and has begun extensive excavations and work upon the land, and has laid extensive foundations thereon with the view to erecting an apartment house or hotel of fourteen stories on the premises. At the time Stafford acquired title to his lands he had at least constructive notice of the restrictions imposed upon the entire tract, as his deed contained a covenant which put him upon inquiry, and he was, therefore, bound.

The particular covenant alleged to have been violated by the defendant in the plans, specifications and actual work, so far done upon his premises, is this: "That no building shall at any time be erected within twenty feet of the front property line of any street or avenue, except Atlantic avenue."

The defendant did not deny the violation in fact charged against him, of the terms of the restrictive covenant, but sought to justify its violation, and the defense was that the general neighborhood scheme had been abandoned, or at least that the complainant had acquiesced in such numerous violations of it as to be estopped from objecting to the defendant's violation, and, also, that the complainant had himself violated one of the covenants in such a way as to disentitle him to enforce any of them against the defendant.

As to the alleged abandonment of the scheme: Mr. Ashmead, a civil engineer, testified that he was acquainted with lands and premises in Atlantic City and particularly the portion formerly known as Chelsea, in which the premises in dispute are situate. He says that he has made a survey and measurement of the houses and buildings on the tract with reference to violations of the twenty-foot building restriction as to front lines, and the five-foot restriction as to side lines, the latter not being involved in this suit, and finds upwards of a hundred violations of these restrictions. It ought to be said that there are several streets or avenues crossing the section north and south and east

and west. The lands of the parties to this suit are on Brighton avenue near the ocean.

It is to be gathered from all of the restrictive covenants that the scheme was one devised for a residential neighborhood, and had for its principal object the security of light and air and a free and unobstructed view of the sea. Complainant's hotel is near the ocean and the building proposed to be erected by defendant would be the only one between that of the complainant and the sea. The violations of the restrictive covenants testified to by Mr. Ashmead are mostly on highways other than Brighton avenue and many of them are inconsequential, and apparently none of them deleteriously affect the complainant.

Vice-Chancellor Emery in *Morrow* v. *Hasselman, 69 N. J. Eq. 612*, held that immaterial violations of restrictions, not showing an intention to abandon a general plan for the improvement of a locality, are not a defense to an action by one purchaser to enforce a restrictive covenant against another.

Vice-Chancellor Bergen's decision in *Chelsea Land and Imp. Co.* v. *Adams, 71 N. J. Eq. 771*, which was there affirmed by the court of errors and appeals on his opinion, does not operate to preclude complainant in this case from restraining the violation of the restrictive building covenant in question. In that case, because upon this very tract there had been something like a hundred violations of the restrictions as to front and side lines, the vice-chancellor refused to enjoin the defendant from violating the covenant not to build within twenty feet of the street, but that was at the suit of the owner of the remaining lots, the successor in title to the Chelsea Beach Company, who laid them out and imposed the restrictions. The vice-chancellor said that the complainant could not undertake to waive violations of the restrictions in so universal a manner as it had done and then undertake to enforce them against one other of their purchasers, and he significantly remarked that if the original grantor of one hundred and fifty lots, with restriction as to building lines, allows two-thirds of his grantees to violate it without protest, he cannot enforce it against a single grantee for the purpose of benefiting his remaining lands, for the grantee thus assailed is

entitled to the common privileges accorded to other purchasers who were not subjected to the restriction.

Vice-Chancellor Leaming, in *Brigham v. H. G. Mulock Co.. 74 N. J. Eq. 287* (at *p. 288*), adverting to *Chelsea Land Co. v. Adams,* observed that that was a case in which a town site proprietor owned property in all parts of the tract and had permitted violations of the covenant without complaint, and while that was held to operate as a bar to the right of that company to prevent further violations of the same covenant, the adjudication clearly had no application to the rights of the owner of a single lot who might not have so acquiesced; that it would scarcely be possible for any single violation of the covenants to occur without the interest of the original landowner being directly affected, but that the owner of a single lot might have no concern whatever in a violation of the covenant on a part of the tract distant from his lot. And the learned vice-chancellor further held in *Brigham v. H. G. Mulock Company* that any claim of bar asserted against the rights of the owner of a single lot by reason of acquiescence in the violation of restrictive covenants, must be measured by the relation of the asserted violation to the individual lot, citing *Barton v. Slifer, 72 N. J. Eq. 812*, and *Morrow v. Hasselman, supra.*

In *Bowen v. Smith, 76 N. J. Eq. 456*, Vice-Chancellor Leaming observed (at *p. 464*), that the location of the violations of building restrictions referred to were given by street numbers, and while he was unable to accurately locate them, he said that they were manifestly all far from the lot of complainant and in no way affected its desirability, and he observed that such encroachments were of little interest to persons other than owners of adjacent lots. And in that case (at *p. 465*) he remarked that the important covenant which requires buildings to be set back twenty feet from the front property line approaches a question of public as well as private concern that the spirit of the covenant made to preserve the health and comfort of the neighborhood should be maintained.

Mr. Ashmead also testified that the complainant's property, known as the Hotel Gladstone, is a four-story building, and that the south end of the porch, enclosed by glass, extends over the

restricted line twenty feet. It is not entirely clear exactly what is meant by this, but a view of the premises will disclose that this porch, enclosed by glass, is around on the south side of the hotel and that it does not extend beyond the twenty-foot front line building restriction toward Brighton avenue; and it must be meant that it extends over a side line, with reference to which the restriction is that no building shall be erected within five feet of the side lines of a lot; but, as there is an exception where a party may own two or more contiguous lots, I incline to think that this porch may be across the dividing line of two lots owned by the complainant; at least it is not made to appear that there is any encroachment upon the defendant's adjoining lot on the south, but, if there were, that would be a question beside the issue in this case, except as to the side line of complainant's lot; but an assertion that it is twenty feet over the restricted line is not the assertion of an encroachment upon or over a side line. Mr. Ashmead gives countenance to this view as he says in his affidavit that the five-foot side line restriction is not involved in this suit.

The defendant's deed for the property upon which the restrictive covenant is sought to be enforced contains a covenant that the premises conveyed are subject to certain conditions, limitations and restrictions, and among them the restrictive covenants imposed by the Chelsea Beach Company in the deed to Clement J. Adams, August 22d, 1893, duly recorded, and also the restriction of the Chelsea Land and Improvement Company. While the defendant in his answer denies that the land owned by him is subject to the restrictive covenants referred to, or that the premises came to him so restricted, and avers that he owns the land without any binding covenant or restriction as to its use, nevertheless, this averment was not proved, but the proof was entirely to the contrary.

The defendant avers, and, as above indicated, asserts that the complainant's Hotel Gladstone violates the restrictive covenant in that it is built out to the line of Brighton avenue and not twenty feet back therefrom. It appears, however, that the hotel proper does not encroach upon the restricted area, but that an open two-story porch is built out from the hotel to the street line.

The restrictive covenants applicable to the land in question are silent on the question of porches. On the question as to whether these very covenants were intended to apply to porches, Vice-Chancellor Leaming said in *Brigham* v. *H. G. Mulock Co., supra* (at *p. 290*) :

"The fact that so many buildings have been erected with the main body of the building located with reference to the building line and with open porches and bay windows extending over the line measurably indicates a popular interpretation of the restriction to that effect. As is said in *Morrow* v. *Hasselman, 69 N. J. Eq. 612, 617*, if these porches have been erected under an erroneous construction of the covenant, that fact is no evidence of an abandonment of the general scheme."

Houses and hotels have porches, and as they almost invariably project out from the buildings it would seem that a restrictive covenant which would prevent the erection of a building beyond a certain line back from a street, but silent as to porches, ought not to be construed to prevent the building of porches within the prohibited area, and who shall say how extensive the porches may be? Of course, if, under the guise of building a porch, an extension of the building was attempted, such, for instance, as increasing the dining-room space in an enclosed one-story porch-like addition to the building, thus making an enlargement of the dining-room proper, all enclosed as within the building, that might well be considered a breach of the covenant. Each case would necessarily depend upon its own circumstances:

It does not appear how long the Hotel Gladstone has been erected, but its appearance indicates that it is no new building, in fact, that it has been erected for years. · As the defendant's predecessors in title made no objection to the Hotel Gladstone porch as an infringement of the restrictive covenant, and as the defendant himself did not, except by way of answer in this suit brought to restrain his infraction of it, I think he cannot now be heard to object to it. But, more than this: Defendant, by permission, since the hearing has filed a supplemental affidavit in which he says that he has changed his plans so that his main building will be back twenty feet from the line of Brighton ave-

nue and that the space within the twenty feet will be used for an open porch or veranda, in conformity with the sketch or plan exhibited with his affidavit. As the defendant now 'proposes to do what the complainant or his predecessor in title did with reference to the building of a porch within the restricted area between the building line and the street line of Brighton avenue, it does not now lie in the mouth of the defendant to complain of this very thing.

The complainant is entitled to an injunction to prevent the defendant from building his hotel proper beyond the restricted line of Brighton avenue, but not one commanding him to remove the foundations which he has built there, which cannot harm the complainant and which appear to be adaptable for the support of his proposed open porch covering the restricted area. The porch may be built in accordance with the drawing submitted with the supplemental affidavit. The complainant is entitled to costs.