L. E. Hall, Jr., *Appellant*, v Mabel M. Snavely, *Appellee*.

Division B.

Opinion Filed March 30, 1927.

Where restrictions upon the erection of buildings by lot owners in a particular subdivision are not contained in any of the muniments of defendant's title and are not contained in the record of documents affecting the title to defendant's lot that affords notice to the defendants, such restrictions will not be enforced upon the ground that they were intended by the grantor and should be implied.

An Appeal from the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Affirmed.

*Kelly, Sutton, & Shaw,* for Appellant;

*Mabry, Reaves & Carlton,* for Appellee.

Per Curiam.—The amended bill of complaint herein alleges that complainant Hall "is the owner and seized in fee simple of Lot three (3) of Block two (2) of Morrison

Grove Subdivision, according to map or plat thereof as the same appears of record in Plat Book 6, page 54 of the Public Records of Hillsborough County, Florida; that Mabel M. Snavely, the defendant herein, is the owner of Lot twelve (12) of Block two (2) of said subdivision, which lot fronts sixty (60) feet on South Fielding Avenue, running back a distance of ninety-nine (99) feet to an alley, and that your orator's said Lot three (3) of said Block two (2) fronts sixty (60) feet on South Boulevard Avenue immediately back of Lot twelve (12) belonging to the said defendant, all in the City of Tampa; that prior to the 20th day of September, 1911, all of said property included in said Morrison Grove Subdivision was subdivided by and belonged to the Bayshore Realty Company, a corporation, which subdivision was divided into about 248 lots, a plat of which subdivision was recorded by the said Bayshore Realty Company; that when said subdivision was made by the Bayshore Realty Company it was made in pursuance of a general scheme of development and uniform plan adopted by it with the intent and purpose of making the same an attractive high-class residential subdivision, and that the deed under which your orator derives his title, and many others in the said Morrison Grove Subdivision, contained the following restrictions inserted by the Bayshore Realty Company in said deeds to secure the said subdivision as a high-class residential district, to-wit:

This conveyance is made by the party of the first part and accepted by the party of the second part under agreement that the property hereby conveyed is to be used for residential purposes only. That only one residence is to be erected on each lot, and said residence or residences shall face east or west according to the frontage of the particular lot sold, and each of said residences shall cost not less than $3,000.00, but the owner of these lots may have the neces-

sary servants' houses and the necessary outhouses in the rear of said lots. That no liquor or ardent spirits are to be sold on this property for a period of 21 years. That this property not to be sold, rented or otherwise disposed of to any person of African descent; and that no use shall be made of these lots, nor any part thereof, that shall constitute a nuisance or injure the sale of adjoining lots.

That relying upon said general plans as adopted by the said Bayshore Realty Company and as embodied in the said restrictions, many purchasers of lots in said subdivision paid for the same higher prices than lots of similar character in other subdivisions were selling for, and have erected thereon costly and expensive residences costing from $3,000.00 to $25,000.00 each, and that a great number of residences have been erected on the said subdivision, and are being erected thereon, in reliance upon the general scheme of subdivision employed by the Bayshore Realty Company and the covenants contained in the deeds to the purchasers thereof to the effect that only residences shall be erected thereon and only one residence to each lot, and that any violation of said covenants by any purchaser of said lots will be a damage to each and all of the other said purchasers; that all of the said Morrison Grove Subdivision was placed on the market and sold as one unit with the intention of the Bayshore Realty Company that all of said lots therein should be restricted alike as hereinabove set forth; that some of the aforesaid deeds contained the provision that the restrictions therein set forth should apply to each and every lot in the said Morrison Grove Subdivision; that the said Mabel M. Snavely, the defendant herein named, by herself, her servants, agents and employees, has now begun the erection on said Lot twelve (12) of Block two (2) of said subdivision, of a building in violation of the spirit of the development and of the restricted covenants con-

tained in the deeds; that the said Mabel M. Snavely has
commenced and is intending to erect thereon her said lot
what is called an apartment house and a music studio, con-
taining four or five separate and distinct apartments for
four or five separate and distinct tenants or families, in vio-
lation of the intention of the developers and of the cov-
enants contained in the deeds; that the said Mabel M.
Snavely did have knowledge of the fact that Morrison
Grove Subdivision was intended as an exclusive restricted
and high-class residential district is and has ever since it
was platted and sold been used exclusively as a residence
subdivision and that the restrictions against the use of the
lots in the above subdivision for purposes other than the
erection of residences thereon were intended and did apply
to each and every lot sold in the said subdivision, and that
she did have knowledge of such facts in relation thereto
sufficient to put a reasonable and prudent person upon
inquiry.''

The prayer is ''that the said Mabel M. Snavely, her
agents, servants and employees, and all persons acting by
or under her authority, may be severally enjoined and
restrained from erecting upon said Lot twelve (12) of
Block two (2) in Morrison Grove Subdivision said apart-
ment house and music studio, or any other house which is
other than the one residence as provided for in said re-
stricted covenants and in the general spirit of the develop-
ment of the said subdivision, or in otherwise doing any other
matter or thing which shall constitute a nuisance or injure
the sale of your orator's lot,'' &c.

The bill of complaint was demurred to on grounds:

''1.   That the amended bill of complaint fails to allege
sufficient facts showing restrictions attached to and incum-
bered upon the defendant's property which restrictions are
being violated by the defendant in doing the acts and mak-

ing the improvements upon her property, as the complainant has alleged she is now doing.

"2.   That an intent to place such restrictions upon the defendant's property, as the complainant alleges have been placed thereupon, does not amount in law to restrictions which will be binding upon the defendant.

"3.   That the defendant cannot be bound by a 'general spirit' of the property owners in the subdivision in which defendant's lot is situated against making such improvements upon her property as are not restricted in her chain of title, nor in her lawful use of her own property.

"4.   Building restrictions cannot be placed upon the defendant's lot by the Court upon the wishes and desires of adjacent property owners where such adjacent property owners have no legal title to the defendant's property.

"5.   The knowledge of the defendant of the fact that Morrison Grove Subdivision was intended as a residential subdivision cannot estop the defendant from using her property for any lawful use, and which she is not restricted from doing in her legal chain of title.

"6.   That restrictions on other lots in such subdivision cannot be imputed to the defendant, nor placed against her property, where such restrictions do not appear in the legal chain of title to the defendant's property."

The Court sustained the demurrer and complainant not desiring to amend, the bill was dismissed and complainant appealed.

There is no allegation that the restriction sought to be enforced was contained or referred to in any muniment of title or on the plat of the subdivision or otherwise to afford binding constructive notice to the defendant whose title deed of conveyance did not include or refer to the restriction or to any document or record containing it.   There is an allegation that some of the deeds conveying lots in the

subdivision contained a provision that the restrictions referred to should apply to each and every lot in the subdivision; but it is not alleged that such deeds are duly recorded, even if that would afford constructive notice binding on the defendant. Allegations of the intentions of the Bayshore Realty Company, the common grantor, with reference to building restrictions in the subdivision do not afford an equity for the relief prayed even if the defendant knew of such intentions.

In Miles v. Hollingsworth, 44 Cal. App. 539, 187 Pac. Rep. 167, the plat of the lots and the *record* of deeds referring to restrictions affecting all the lots were held to be constructive notice to purchasers of lots. See also King v. St. Louis Union Trust Co., 226 Mo. 351, 126 S. W. Rep. 415; Tallmadge v. East River Bank, 26 N. Y. 105; Mott v. Oppenheimer, 135 N. Y. 312, 31 N. E. Rep. 1097; Bridgewater v. Ocean City R. Co., 62 N. J. Eq. 276, 49 Atl. Rep. 801; Holt v. Fleischman, 78 N. Y. Supp. 647, 75 App. Div. 593. No such notice is alleged here.

Affirmed.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur.

ELLIS, P. J., AND STRUM AND BROWN, J. J., concur in the opinion.