HOMER MERCER and MATTIE L. MERCER, husband and wife, *Appellants*, v. A. J. KEYNTON and IDA SWANK KEYNTON (also known as IDA M. SWANK), husband and wife, *Appellees*.

Division B.

Opinion filed April 23, 1930.

Petition for rehearing denied May 13, 1930.

*Robert H. Anderson* and *Fred M. Valz*, for Appellant;

*Smathers, Kluttz & Huck* and *W. J. Oven*, for Appellees.

WHITFIELD, P. J.—A bill of complaint filed April 30, 1928, by appellants alleges that the defendants, appellees here, have commenced the construction of a building on property in Bayonne Subdivision of Miami, Florida, adjoining that of the complainants, in violation of a restrictive convenant that is contained in the muniments of the title under which defendants claim, and injunction and other appropriate relief is prayed.

The restrictive convenants contained in the muniments of title are:

"That not more than one dwelling house shall be built on any one lot, and no house shall be built for more than one family, and that no dwelling house shall be erected upon any lot facing north and south nearer than 35 feet to the front line of said lot and each house shall be built in the center of the lot from east to west upon which same is situated; no dwelling house shall be built upon any lot in Bayonne Subdivision that shall cost less than $2,000."

And:

"No more than one dwelling house shall be built on one lot, and no house shall be built for more than one

family; each house shall be built in the center of the lot from east to west on which same is situated; no dwelling erected upon above described property shall cost less than $2,000.00, neither shall same be built nearer than thirty-five feet from the front of said lot; neither shall the premises herein and hereby conveyed ever be used for any immoral or illegal purposes nor any nuisance permitted thereon.''

It is alleged that the complainants:

''Are the owners of the property immediately adjoining said building on the west, and that said building is being built flush with the west line of defendants' property, within ten feet of these complainants' residence; that these complainants do have and maintain their home upon their respective properties and are occupying the same as their home and permanent residence; that if this combination automobile garage, gasoline filling station and tire repair shop is erected according to the plans and specifications and operated as such, there will necessarily be loud noises, noxious odors and dangers. Automobiles will be passing in and out of said garage intermittently during the entire day and night; there will be pounding upon metals; testing of engines varied rates of speed, continuous explosions of gasoline in motors, speeding and racing of motors, grinding of gears and testing of cut-outs; the noxious odors of burnt and unburnt gasoline and oil; smoke from automobile exhausts, the offensive odor of heated rubber, loud and coarse language, the sounding of horns and klaxons, the flash of headlights in complainants' windows at night as automobiles turn into and out of said garage and filling station, all of which will seriously interfere with the peaceful en-

joyment of the complainants' home and other homes in the neighborhood, and make the subdivision and neighborhood a disagreeable, unsightly, dangerous, offensive and an unsatisfactory place in which to live. The entrance and exit of automobiles into the garage during the day and night will be dangerous to pedestrians passing along N. E. Twenty-first Street and Biscayne Boulevard. The conduct of such a business will result in congestion and confusion in and about the intersection of N. E. Twenty-first Street and Biscayne Boulevard. The storage of a sufficient amount of gasoline to serve the patrons of a garage of this size, the keeping of the quantities of oil necessary for the operation and lubrication of such automobiles, the smoke by attendants and others, the use of electric current near the gasoline and oils, the adjusting of carburators, the maintenance of a steam boiler, the replacing and vulcanizing of tires, the backfire of motor cars and explosions of gasoline, will all result in great danger from fire, all of which will have the effect of reducing the value of properties surrounding the garage and will tend to the removal of tenants living in the neighborhood. It will increase the rate of insurance and will impose additional burdens upon the surrounding properties, and will decrease the net returns therefrom and will constitute a nuisance.''

The defendants by answer aver:

''That they had no knowledge, either actual or constructive, of the restrictions alleged in said bill and as covering the property in Bayonne Subdivision; that there were no such covenants or restrictions contained in their deed; that if any such restrictions ever existed and encumbered the other properties in said

918

Bayonne Subdivision, the same have long since been abandoned by the various property owners in that subdivision, and in consequence there have been numerous violations of said restrictions from time to time until at the present time there are boarding houses, art schools and dancing schools conducted and maintained in this subdivision and contrary to the so-called restrictions of the Bayonne Subdivision, and that there are numerous two-family houses maintained in certain buildings in said subdivision and in violation of said restrictions; that in addition to the foregoing violations, there have been numerous other violations by property owners with respect to the erection of buildings within a certain number of feet from the street lines in said subdivision; that recently the City of Miami condemned and opened up a one hundred foot boulevard through this Bayonne Subdivision, with parkways and sidewalks, and in order to do so appropriated the major portion of defendant's lot, leaving them only a long narrow strip along said highway, and said city has since been taxing these defendants on the theory that it was business property; that as a matter of fact, all property facing on Biscayne Boulevard is now considered and taxed by the City of Miami, Florida, on the basis of business property and at a higher rate of valuation, and as a consequence thereof, all of said restrictions of the Bayonne Subdivision and all other subdivisions bordering on Biscayne Boulevard have been completely violated and abandoned insofar as that particular street is concerned, and the land adjacent thereto. Defendants further aver that the complainants in this suit are guilty of laches; that it would be inequitable and unjust to grant them the relief as prayed for in their

bill by reason of the fact that they have stood by and silently acquiesced in the building which your defendants have had under construction since March 22, 1928; that the complainants shortly thereafter were informed by the defendants of their intention and plans to build the building in question and to conduct the nature and class of business therein, as described in complainants' bill; that at the present time the framework of the entire building has been completely built, with the walls constructed of poured concrete, and that at no time have the complainants protested or demurred to the completion of said building as planned until the filing of this bill. Defendants further aver that at no time has it ever been their purpose to conduct a garage business for the parking and repairing of cars, as alleged in complainants' bill that they deny that the business they plan to maintain and operate in said building will be a violation of any of the restrictions or constitute a nuisance in the neighborhood.''

An appeal was taken from the following order:

''This cause having come on to be heard upon the sworn bill of complaint, the complainants' application for a temporary injunction, the affidavits in support thereof and the counter affidavits filed by and in behalf of the defendants, and said matter having been argued by counsel for the respective parties orally and upon written briefs, and the court being fully advised in the premises;

''IT IS ORDERED, ADJUDGED AND DECREED that complainants' application for a temporary injunction or restraining order herein, be and the same is hereby denied, without prejudice.''

Even though the deed of conveyance from the defendants' immediate grantor did not contain the restrictive covenants, such covenants were contained in the recorded muniments of title through which ·defendants claim title, and being of record in the chain of title, the defendants had constructive notice of such restrictive covenants which may be enforced in appropriate proceedings duly and timely taken. See authorities cited in Hall v. Snavely, 93 Fla. 664, 112 So. R. 551; Mayes v. Hale, 82 Fla. 35, 89 So. R. 364; Moore v. Stevens, 90 Fla. 879, 106 So. R. 901, 43 A. L. R. 1127; Stephl v. Moore, 94 Fla. 313, 114 So. R. 455.

In this case a temporary injunction was denied *without prejudice;* and in view of the delay of the complainants in bringing the suit until the construction of the building had progressed so far as to make it inequitable to grant an injunction unless a nuisance is developed, and in consideration of the available remedy by an action at law for damages, to the complainants proximately resulting from a breach of the restrictive covenants that are binding on the defendants and not waived or abandoned, the order denying an injunction without prejudice to the legal or equitable rights of the complainants, is affirmed.

STRUM AND BUFORD, J. J., concur.

ELLIS AND BROWN, J. J., concur in the opinion and judgment.

TERRELL, C. J., not participating.