MARY D. OSIUS, a *feme sole,* and F. J. OSIUS REALTY COMPANY, a Florida corporation, *Appellants,* v. CARRIE ILKO BARTON, a widow, DORA BURR, a widow, *et al., Appellees.*

147 So. 862.

Opinion filed April 26, 1933.

558

*James M. Carson* and *Ross Williams,* for Appellants;
*S. P. Robineau* and *William Muir,* for Appellees.

DAVIS, C. J.—This is an appeal in equity from an order adjudicating the insufficiency of a cross bill and sustaining a general and special demurrer thereto and striking certain portions of the same.

The original bill alleged that the Alton Beach Realty Company, in pursuance of a general plan of developing and subdividing certain described property of which it was the owner, and for the general and common benefit of each and every lot located in its subdivision, which was being developed as a high class residential property, did in and by its conveyances of parcels thereof, fix and establish certain restrictions upon said property, binding upon purchasers of lots in same, which restrictions it was intended should and would become covenants running with the separate parcels of the sub-divided land, the assumption and compliance with said covenants by future grantees being made express consideration for the grants thereof; that amongst the restrictions incorporated in conveyances executed ac-

cording to said plan of development were restrictions' to the effect that no house structure or building to be used as a business room, storage house, manufacturing establishment, machine shop or for any other business or commercial purpose whatsoever, should be constructed, erected or placed on any of the lots situate in said sub-division, and that no business or commercial enterprise .whatsoever should be operated or maintained thereon; that notwithstanding the restrictions aforesaid running with the land, and binding upon the defendants, Frederick J. Osius and Mary D. Osius, because of their acquisition of title to certain lots in said subdivision in subservance to said restrictions, that said defendants in defiance and disregard of said restrictions, and in breach of the covenants providing for the same, had rented, leased and demised their certain dwelling house situate on their said lots, for use as a beauty parlor for the purpose of conducting a commercial business thereon under the name of "Louise's Beauty Saloon;" that defendants had boasted of their said act as having been done with intent to breach the said covenants; that the breach of the said restrictions was irreparably damaging the complainants as lot owners in the said subdivision; that complainants were entitled to enforce said covenants as covenants running with the land and that in order to do equity, the Court should grant to complainants an injunction enjoining and restraining the further conduct of said business known as "Louise's Beauty Saloon" in violation of said covenants, and that in addition thereto the Court should issue its mandatory injunction ordering the defendants to remove all furniture, fixtures and paraphernalia of said business or commercial enterprise from the property involved.

The defendants answered and filed in connection therewith a cross bill seeking affirmative relief against the alleged restrictive covenants. The court sustained the sufficiency

of the answer but denied the sufficiency of the cross bill. So the proposition presented by this appeal is whether or not there is any equity in the cross bill, and if so, was the cross bill subject to the special demurrer to certain paragraphs, and to the motion to strike certain paragraphs by way of exception thereto.

The record shows that the deed under which defendant Frederick J. Osius claims title to his property was executed in December, 1921, and contained the restrictive covenants hereinbefore mentioned. It is also shown that his title deeds provided as follows: "All the conditions, covenants, stipulations and agreements, and each and every of them herein, contained are to have the effect of covenants running with the lands, * * * and the grantee, his heirs and assigns, by the execution, delivery and acceptance of this deed, each severally binds himself, his successor or successors, and assigns, to perform, fulfill, abide by and carry out each and every of said covenants, stipulations, and agreements, and further and at all times to acquiesce in the intent of the above grantor and the grantee to make, have and keep all of the said covenants, stipulations and agreements as to all of the parcels of land included within the boundaries and shown upon the recorded plat of Fisher's First Subdivision of Alton Beach, and the successive owners thereof while in possession, but not in *perpetuam,* covenants, running with the land, and especially that the strip or parcel of land lying between the Atlantic Ocean and the private road running along the east side of Blocks 1, 28, 29, 55, 56 and 77 as shown by said plat, shall be used only for landscape purposes and to preserve the view of the ocean from the landward unobstructed except for the beautification by trees or shrubbery, and that no buildings of any kind or nature shall ever be erected thereon or on any accretions of and thereto by reason of the recession of the waters of the Atlantic

Ocean; and this covenant shall inure to the benefit of and be enforceable by the owner of any parcel of real estate contained in and subdivision aforesaid, his legal representatives, heirs, successors, and assigns, as well as by the said Alton Beach Realty Company, and the failure of said Alton Beach Realty Company or by any owner, however, long continued, to object to any violation of or to seek in court the enforcement of any one of said covenants or of this covenant, shall in no event be deemed a waiver of the right of any other lot-owner or any successor in title to any lot in said subdivision, to object and sue to abate, prevent, remove or restrain any breach of the same breach or as to any breach occuring prior or subsequent thereto.' "

The original bill rested upon the theory that complainants, as owners of the dominant estates, were entitled to enforce the restrictive covenants inuring to their benefit, by restraining the operation of any business or commercial enterprise on the north half of Lot 4, and Lots 5 to 18 of Block 54 of Fisher's Subdivision of Alton Beach, as to which it was claimed that there was only one restriction or covenant running with the land involved in complainants' case, that is, the restriction against the operation of business or commercial enterprises. The complainants, Shepard and Morris, traced their title to the property in the Subdivision through the Osius deed back to Alton Realty Company, while the others did not.

The theory of complainants' original bill is therefore that since the entire Fisher's First Subdivision of Alton Beach was originally (with certain exceptions not necessary to be stated) restricted in use to a single family, private residential dwelling houses, with an inhibition against the use of any of the lots here involved for business or commercial purposes, which restrictions were carried forward into the deed to Frederick J. Osius, upon which his title rests, that

complainants, as fee simple owners of lots located in Fisher's First Subdivision of Alton Beach, are entitled to enforce the restrictions by equitable proceedings, inasmuch as the restrictions sought to be enforced are, by their terms, covenants running with the land.

On the other hand the theory of the defense is that the restrictions sought to be enforced are unenforceable because the company originating them never had any definite plan for Subdivision, but has followed a plan flexible and subject to change from time to time; that the restrictions outstanding against the lots are indefinite, uncertain and in irreconcilable conflict; that the restrictions themselves have been so changed, modified and in effect abandoned from time to time as to have become practically abrogated; and that in addition to all the foregoing, the restrictions, if they ever were valid and enforceable to begin with, have since been nullified by reason of substantial changes in the locality which have rendered them no longer applicable.

The theory of the cross bill is that since the legal effect of the restrictions relied on ought to be in equity adjudged as having become terminated, they should also be ordered removed as a cloud on cross complainants' title and cancelled of record, in addition to a decree denying any enforcement thereof to the original complainants.

The general theory behind the right to enforce restrictive covenants, is that the covenants must have been made with or for the benefit of the one seeking to enforce them. The violation of a restrictive covenant creating a negative easement may be restrained at the suit of one for whose benefit the restriction was established, irrespective of whether there is privity of estate or of contract between the parties, or whether an action at law is maintainable. The action of the court of equity in such cases is not limited by rules of legal liability and does not depend upon legal privity of estate,

or require that the parties invoking the aid of the court should come in under the covenant, if they are otherwise interested. The rule is well established that where a covenant in a deed provides against certain uses of the property conveyed which may be noxious or offensive to the neighborhood, inhabitants, those suffering from a breach of such covenant, though not parties to the deed, may be afforded relief in equity upon a showing that the covenant was for their benefit as owners of neighboring properties. Gilbert v. Peterer, 38 N. Y. 165, 97 Am. Dec. 785; Silberman v. Uhrlaub, 116 N. M. App. Div. 869; 102 N. Y. S. 299; Johnson v. Robertson, 156 Iowa 64, 135 N. W. Rep. 585; Nottingham Patent Brick & Tile Co. v. Butler, L. R. 15 Q. B. Div. 261, L. R. 16 Q. B. Div. 778; Stephl v. Moore, 94 Fla. 313, 114 Sou. Rep. 455; Hall v. Snavely, 93 Fla. 664, 112 Sou. Rep. 551; Mayes v. Hale, 82 Fla. 35, 89 Sou. Rep. 364; Moore v. Stevens, 90 Fla. 879, 106 Sou. Rep. 901, 43 A. L. R. 1127; Mercer v. Kenyton, 99 Fla. 914, 127 Sou. Rep. 859.

But the right in equity of grantees from a common grantor, to enforce, *inter sese,* covenants entered into by each with the grantor, or running with the land as emanating from the common grantor, is ordinarily confined to cases where the scheme of restriction contemplated by the deeds is universal or reciprocal, the consideration for the obligation to observe the restrictions is the imposition of the same or kindred restrictions on other lots similarly situated. Kliem v. Sisters of Charity of St. Elizabeth, 101 N. J. Eq. 761; 139 Atl. Rep. 174; Forman v. Safe Deposit & Trust Co., 114 Md. 574, 80 Atl. Rep. 298; Trustees of Columbia College v. Thacker, 87 N. Y. 311, 41 Am. Rep. 365, 18 C. J. 394-395.

It seems to have been uniformly held that where the equitable enforcement of building restrictions would be oppres-

sive and unreasonable because of an entire change in the circumstances and in the neighborhood of the property, and the character of the improvements and the purposes to which they are applied, equity may refuse to enforce observance of the restrictions, and leave the parties to their action at law. Moore v. Curry, 176 Mich. 456; 142 N. W. Rep. 839; Kneip v. Schroeder, 255 Ill. 621, 99 N. E. Rep. 617. And it has also been held that a change in the character of the neighborhood may be so radical, or there may be such a course of conduct by the interested parties in mutually disregarding the restrictions, that such restrictions may cease to have any further life and thereby become subject to being removed as clouds on the title. McArthur v. Hood Rubber Co., 221 Mass. 372, 109 N. E. Rep. 162.

A court of equity has jurisdiction to cancel a restrictive covenant in a deed as a cloud on title, though the grounds for cancellation would constitute a complete defense to any attempt by action to enforce the restriction. Rector, etc. v. Rector, 114 N. Y. S. 623. Thus it has been held that where facts are set out in a bill tending to show that as to the defendants the restrictions running in their favor have come to an end because of circumstances that have arisen which would show that the purpose for which the restrictions were imposed have come to an end, and the use of the tract of land for whose benefit the restrictions were established has so utterly changed that no party to the bill could be heard to enforce it in equity, or would suffer any damage by the violation of such restrictions, that a proper case is made out for the equitable relief through the removal and cancellation of the restrictions which, if allowed to remain, would be to indirectly enforce them to complainants' prejudice. McArthur v. Hood Rubber Co., 221 Mass. 372, 109 N. E. Rep. 162; 2 Tiffany on Real Property 1425, 1457,

1458; 18 C. J. 402; Hollensteiner v. Missoula Lbr. Co., 37 Mont. 278, 96 Pac. Rep. 420.

Appellees contend in this case that where it is made to appear that building restrictions have been embraced in covenants running with the land, and it is further made to appear that such restrictions were made by a common grantor for the benefit of all the owners of lots in the subdivision, that it is not necessary that there be any uniform plan for the development of the sub-division, in order to render the restrictions enforceable at the suit of a lot owner otherwise shown to have an interest in the enforcement thereof.

We agree with appellee's contention in this regard, because the question of uniform plan is only material to an inquiry as to whether or not there has been any clear manifestation of an intention of the person who was the source of title, to subject one parcel of land to a restriction in its use for the benefit of another parcel constituting a portion of the original whole.

A uniform plan of development is not a *sine qua non* for sustaining the validity of building restrictions *per se*. But the presence or absence of such a uniform plan may be the main factor in many cases by which the beneficial interest of a complainant asking for the judicial enforcement of such restrictive covenants is to be determined when it is not otherwise apparent. Proof of a general plan or scheme for the improvement of the property, as a prerequisite to the right of grantees from a common grantor to enforce, *inter sese,* covenants entered into by each with, or through, the grantor, is only required to show that the covenant sought to be enforced has entered into the consideration for the grant of the title, and therefore such as should be exacted from each purchaser for the benefit of all purchasers. See Thompson on Real Property, Art. 3412. Here the beneficial

interest of complainants is otherwise made to appear. Especially as to complainants Morris and Shepard, so the allegations of the cross bill, as to the non-existence of a uniform plan of development are immaterial to the validity or enforceability of the covenant here relied upon, and such as should have been stricken.

It is further pointed out by appellees that the only restriction sought to be enforced in this case is the one relating to the operation of a business or commercial enterprise on the north half of Lot 4, and on Lots 5 to 18, both inclusive, of Block 54, of Fisher's First Subdivision of Alton Beach. That the particular restriction here sought to be enforced is definite and certain can scarcely be denied, when consideration of the definiteness and certainty of the restrictions that have been imposed, is confined to the particular restrictive covenant here involved. Those allegations of the cross bill attempting to set up the indefiniteness and uncertainty of the plan of restrictions as a whole, or the indefiniteness and uncertainty of other related restrictions but of a different character, were consequently immaterial and such as should have been stricken from consideration in this case.

A cross bill, strictly speaking, is one brought by a defendant in an equity suit against the complainant in the same suit, or against other defendants in the same suit, touching the matters in question in the original bill. It is considered as an auxiliary suit or dependency upon the original bill ,and can be sustained only on matters growing out of the original bill. There is a well defined distinction between a cross bill merely defensive in character, and one seeking affirmative relief. The dismissal of the original bill carries with it a purely defensive cross bill, but not one seeking affirmative relief. The great weight of authority is that in a cross bill seeking affirmative relief a new party may be added, if his presence is essential to a complete de-

termination of the matter in litigation. Price v. Stratton, 45 Fla. 535, 33 Sou. Rep. 644; Special Tax School Dist. No. 1 v. Smith, 61 Fla. 782, 54 Sou. Rep. 376.

Insofar as the cross bill here involved was not responsive to the subject matter of the original bill, which bill was confined to an attempt to enforce that particular building restriction relating to and ·prohibiting the use of the property of cross complainants here involved for business or commercial purposes, it was subject to the special demurrers interposed and directed to those paragraphs of the bill which attempted to bring in new and extraneous matters relating to other restrictive covenants which might possibly be the subject of a separate suit. But to the extent that the cross bill set forth facts responsive to the particular claim of right being prosecuted by the complainants, and tended to show that, by reason of vital changes in the neighborhood, and that as to the answering cross defendants, the enforceability of the particular restrictive covenant sued on had come to an end, and should be cancelled and removed of record, the cross bill contained equity and the general demurrer to same should not have been sustained.

Where the fair import of the allegations of a cross bill filed by defendants to secure affirmative relief against the original complainants suing to enforce a building restriction imposed by an alleged covenant running with the land involved in the suit, is to set forth definite counter allegations that the restrictive covenant sued upon should be cancelled and removed of record, because it threw a cloud and suspicion upon the title of the plaintiffs, when the purpose for which the covenant was made and the restriction was imposed has come to an end, by reason of the fact that the use of the tract of land for whose benefit the restriction was established had so utterly changed that no party defendant to the cross bill could be heard to enforce it in equity, or

would suffer any damage by its violation, a general demurrer to such cross bill for want of equity should be overruled.

The sixteenth and seventeenth paragraphs of the defendants' cross bill aver in substance that the subdivision known as Alton Beach was intended to constitute a strictly small town residential development of the town of Miami Beach, then a little village of about 700 population; that since the original plating in 1914, as well as since the deed from Alton Beach Realty Company to cross complainants in 1921, the large and thriving city of Miami Beach has superseded the small village of Miami Beach, that the property owned by cross complainants has, by reason of the surrounding property developments, gradually been converted from residential property to business property without fault on their part, so that their cold holdings are no longer suited or desirable for strictly residential purposes; that the population of Miami Beach has in the course of years advanced from 700 to 20,000 people; that by reason of the development of Miami Beach from a village to a thriving city, as well as because of the attendant change which has come about in the developed properties in the locality of the Alton Beach Subdivision, that the cross complainants' property is now almost useless to them as residential property, and has practically no income value as residence property, although heavily assessed for burdensome taxes because of its aforesaid location in the vicinity of business property; that a due return on said property can only be realized from it as business property and not as residential property; that to enforce and continue the requirement that cross complainants' property be used solely as residence property would be a practical confiscation of the same when on the other hand it would be for the best interest of the growth and prosperity of the city of Miami Beach that the

restrictions be removed so as to avoid undue oppression of cross complainants with respect to a restriction no longer capable of serving the purpose for which it was imposed in the first instance,* and which is accordingly obsolete and such as ought not to be specifically enforced by a court of equity, but on the contrary should be cancelled and removed of record.

The foregoing two paragraphs do not set up any grounds endeavoring to set aside the alleged restrictions involved in this suit as to any other land in the subdivision except that of the particular cross complainants. As to them the change in the character of Miami Beach is alleged to have been so radical, that there can in equity and good conscience be no further life to a restriction prohibiting the *use* of cross complainants' particular lots of land for business and commercial purposes, in view of the purpose and intendment of such a restriction as applied to cross complainants' property in the first instance. They are therefore within the general rule that equity will not take cognizance of a restriction imposed as to the use of property where by reason of a change in the character of the neighborhood not resulting from a breach of such conditions, it would be oppressive and inequitable to give the restriction effect, as where the enforcement would have no other result than to harass or injure the defendant without accomplishing the purpose for which it was originally made. 18 Corpus Juris B400; Star Brewery Co. v. Primas, 163 Ill. 652, 45 N. E. Rep. 145; Russell v. Harpel, 20 Ohio Cit. Ct. Rep. 127; Antes v. Manhattan R. Co. 116 N. Y. S. 697; Jackson v. Stevenson, 156 Mass. 496, 31 N. E. Rep. 691; Roberts v. Scull, 58 N. J. Eq. 396, 43 Atl. Rep. 583; Moore v. Curry, 176 Mich. 456, 142 N. W. Rep. 839; Orne v. Fridenbery,

---

*This last allegation is the principal support of the equity attempted to be shown as ground for affirmative relief.

143 Penna. St. 487, 22 Atl. Rep. 832; 24 Am. St. Rep. 567; McClure v. Leaycraft, 183 N. Y. 35, 75 N. E. Rep. 961. Compare: Noel v. Hill, 158 Mo. App. 426, 138 S. W. Rep. 364; Thompson v. Langan, 172 Mo. App. 64, 154 S. W. Rep. 808, Devlin on Real Estate, Vo. 2, page 1875. See also McArthur v. Hood Rubber Co. (Mass.), 109 N. E. Rep. 162, *supra*.

The foregoing doctrine as applied to real covenants restricting the use of land, may be said to rest upon what is now the generally accepted principle of contract law known as discharge of contractual obligation by frustration of contractual object. The last mentioned principle of law has just been authoritatively re-stated as a part of the common law in the following language appearing in Vol. 1, at page 426 of the American Law Institute's Re-statement of the law of Contracts:

"Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis upon which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performance his promise unless a contrary intention appears." 1. A. L. I. No. 288.

A covenant is said to run with the land when either the liability to perform it, or the right to take advantage of it, passes to the assignee of the land. Savage v. Mason, 3 Cush. (Mass.) 500. The natural desire of house-holders to secure desirable home surroundings because of the growth of cities and the more crowded conditions of modern life, has led to a demand for land limited to development purposes. This natural desire has been so exploited by relators and land companies, that restricted residential property is now becoming the rule rather than the exception

in our cities. The legal machinery to achieve this end has been found in the main not in the ancient rules of easements or covenants, but in the activities of courts of equity in preventing fraud and unfair dealing by those who take land with notice of a restriction upon its use, so that in equity and good conscience they should not be permitted to act in violation of the terms of such restrictions. Clark on Covenants and Interests Running with Land (1929), page 148 *et seq.*

The two most thoroughly developed theories are, first that these restrictions are enforced as contracts concerning land, and second that they are enforced substantially as servitudes or easements of lands. The theory adopted in this State is that the contract which embodies the restriction may be enforced against both the promisor and those who take from him with notice, thereby including amongst those who may enforce the obligation not only the promisee, but those who take from him and those in the neighborhood who may be considered as beneficiaries of the contract. Mercer v. Kenyton (Fla.), *supra;* Stephl v. Moore (Fla.) *supra.*

Because of the nature of covenants imposing restrictions on the use of real property, whether sought to be enforced as between covenantor and covenantee, or whether treated as enforceable because running with the land for the benefit of the parties for whose protection they were made, it seems to be now generally recognized by the best considered cases on the subject, that all the rules as to ending easements and profits, including those as to abandonment of the dominant owners, apply to such covenants, including the recognition of an implied condition in the original grant that the general policy of the law to dispense with encumbrances on title shall prevail, where enforcement of restrictive covenants is no longer of general usefulness, nor capable of

serving the purpose for which the restrictions were imposed. Clark on Covenants and Interests Running with land, *supra,* 163-165; Jackson v. Stevenson, 156 Mass. 496, 31 N. E. Rep. 691, 32 Am. St. Rep. 476.

The allegations of the cross bill to the effect that complainants had lost by laches, acquiescence and abandonment the right they sought to protect, must be held bad on the authority of Stephl v. Moore, 94 Fla. 313, 114 Sou. Rep. 455, inasmuch as the allegations of the cross bill now before us fail to meet the test of sufficiency laid down in that case.

It follows from what we have said that the special demurrers to, and motions to strike, paragraphs 1, 2, 3, 16 and 17 of the cross bill should have been overruled and that the general demurrer to such cross bill should have been overruled to so much of the cross bill as remained after the sustaining of the special demurrers and the granting of the motions to strike those paragraphs of such bill which were, as we have held, properly adjudged to be bad.

The order appealed from is reversed in part and the cause remanded with directions to enter an order duly amended to conform to this opinion, and have such further proceedings thereafter as may be according to law.

Reversed in part and remanded with directions.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS and BROWN, J. J., not participating.