86 So.2d 138 (1956)
Oscar L. VETZEL and Florence Vetzel, his wife, Appellants,
v.
Howell L. BROWN, Marjorie D. Brown, his wife, Melvin R. Wilson, Ermal L. Wilson, his wife, Robert W. Christy, Connie W. Christy, his wife, Harold A. Robinson and Bernice A. Robinson, his wife, Appellees.
Supreme Court of Florida. Division B.
March 2, 1956.
Rehearing Denied April 2, 1956.
*139 Hall, Farnsworth & Rousseau, Tampa, for appellants.
Bucklew & Ramsey, Tampa, for appellees.
ROBERTS, Justice.
Mr. and Mrs. Vetzel, plaintiffs below and appellants here, are the owners of a parcel of unimproved land consisting of three and a fraction lots in Unit No. 4 of Belmar Subdivision in the City of Tampa, County of Hillsborough, Florida. The defendants own and occupy homes in the same unit of the same subdivision. All parties deraign their title, but not immediately, from a common grantor, one Rosemary Stearns. The purpose of plaintiffs' suit was to cancel, as against defendants and all other persons similarly situated, certain restrictions on the use of their property contained in an agreement executed in 1947 by Miss Stearns and a Mr. and Mrs. Crabb.
Miss Stearns owned lots in Units No. 4 to 7 inclusive, and the Crabbs owned lots in Units No. 8 and 9 of Belmar Subdivision. By their 1947 agreement, they mutually covenanted on behalf of themselves, their heirs, legal representatives, successors and assigns, to restrict the use of such lots to the purposes therein mentioned, and expressly provided that the covenants therein contained should run with the land and "be binding upon all persons hereto, and all persons, firms or corporations claiming through or under them." The agreement designated certain lots in Unit No. 4 as business lots and restricted all the others to residential usage, either single-family or duplex. It contained other restrictions as to set-back lines, building heights, and the like. It was recorded in the public records of Hillsborough County. One of its effects  and the one with which we are here concerned  was to establish a business or commercial zone on each side of Manhattan Avenue, including the west half of the block in which the Vetzels' lots are located. The lots in the east half of this block were restricted to residential usage, and the Vetzels' lots lie on the south end of the east half of this block, adjoining on the west the western, or commercial, side of the block.
The Vetzels bought their lots in 1955 under a deed that expressly provided that the title was "subject to easements and restrictions of record." There was a grocery store with parking area and loading platform directly across the street, and a church on the corner diagonally across the street, from their lots. They were advised by their grantor that the property was zoned for business usage, and a check with the City of Tampa zoning officials confirmed their statement. They did not check the record title to the property and had no actual notice of the restrictions contained in the 1947 Stearns-Crabb agreement until after they had bought the property and were attempting to obtain a loan to construct a store building on it. They contended in the lower court, and argue here, that the restrictive covenants of the 1947 agreement cannot be enforced against them because (1) there was no privity of estate between Miss Stearns and the Crabbs to support a covenant running with the land and binding upon subsequent purchasers, and (2) the change in the character of the neighborhood since the 1947 agreement was executed would make it inequitable to enforce its restrictive covenants against them. The lower court heard the testimony and found against them on both issues. They have appealed from the final decree dismissing their complaint.
As to their first contention, that is, that the "privity of estate" which is one of the essentials of a covenant running with the land means a mutuality or succession of interest between the original covenantor and covenantee, it must be conceded that there are cases so holding. See Clark, Covenants and Interests Running with Land, 2d Ed., p. 111 et seq. Mr. Clark, however, criticizes *140 this view as being supported neither by ancient law nor modern policy. He says in his work, supra, at page 117, that "The requirement of privity is designed to furnish a connecting link between the parties. That is already supplied between covenantor and covenantee by the promise itself. The need is to justify the transfer of the right or duty created by the promise, not to justify the promise itself." And he concludes that "privity in the sense of succession to the estate of either party to the covenant is the only historically justifiable requirement * * *" Clark, ibid., page 131. See also 165 Broadway Building v. City Investing Co., 2 Cir., 120 F.2d 813, 816, to the same effect.
But we do not think it is necessary to decide this question in the circumstances here present. For we are not here concerned with a suit at law on the covenant; we have here a suit, in equity, by remote grantees against other grantees from a common grantor, to be relieved of restrictions as to use placed upon their land by their common grantor for the benefit of all of the grantees of such common grantor, and as a part of a general scheme of development and improvement of the lots owned by her and an adjoining landowner. Such use restrictions have long been enforced by courts of equity against a granttee taking title with notice of the restrictions, without regard to the technicalities of law relating to covenants running with the land. Cf. Osius v. Barton, 109 Fla. 556, 147 So. 862, 88 A.L.R. 394; Meade v. Dennistone, 1938, 173 Md. 295, 196 A. 330, 114 A.L.R. 1227; Trustees of Columbia College v. Lynch, 70 N.Y. 440, 448, 26 Am.Rep. 615; cases cited in the annotation in 89 A.L.R. pp. 812 et seq.; Oosterhouse v. Brummel, 1955, 343 Mich. 283, 72 N.W.2d 6; Maxwell v. Smith, 1955, S.C. 89 S.E.2d 280; Bullock v. Steinmil Realty, 1 Misc.2d 46, 145 N.Y.S.2d 331; O'Neil v. Vose, 1944, Okl., 145 P.2d 411; Turner v. Brocato, 1955, 206 Md. 336, 111 A.2d 855, 860; 26 C.J.S., Deeds, § 167, p. 543; Clark, Covenants and Interests Running with Land, 2d Ed., pp. 170 et seq.
The Vetzels had notice of the restrictions on the use of their property. They had the constructive notice imputed to them by the recordation of the 1947 agreement, and they had "implied actual notice" because of the typed-in statement in their deed (which was on a printed form) that the title was "subject to easements and restrictions of record." See First Federal Savings & Loan Ass'n of Miami v. Fisher, 1952, Fla., 60 So.2d 496, 499, for a discussion of "implied actual notice." The restriction on their property was a part of a general plan to segregate business properties in one area of Unit No. 4 and to restrict the remainder of the lots owned by the covenanters in Units No. 5 to 9, inclusive, to residential purposes. Such restrictions are favored by our public policy today, and must be protected by "the activities of courts of equity in preventing fraud and unfair dealing by those who take land with notice of a restriction upon its use, so that in equity and good conscience they should not be permitted to act in violation of the terms of such restrictions." Osius v. Barton, supra, 109 Fla. 556, 147 So. 862, 867. The defendants testified that they bought their property relying on the covenants restricting the Vetzels' property to residential use, and it was stipulated that other homeowners in the area would testify to the same effect. There was evidence that the value of the defendants' homes would decrease, if the Vetzels' property were devoted to a commercial use. In these circumstances, we agree with the Chancellor that in equity and good conscience, the Vetzels should not be permitted to act in violation of the terms of such restrictions.
As to their second contention respecting the change in the character of the neighborhood, this was essentially a question of fact that was determined adversely to their contention by the trier of the facts, and we see no reason to disturb his findings in this respect  particularly in view of the fact that the only two changes (the grocery store and church, referred to above) had taken place before the Vetzels acquired title to their lots. Cf. Allen v. Avondale, 135 Fla. 6, 185 So. 137.
*141 No error having been made to appear, the decree appealed from should be and it is hereby
Affirmed.
DREW, C.J., and THOMAS and O'CONNELL, JJ., concur.