101 So.2d 587 (1958)
L.J. BATMAN et ux., Appellants,
v.
J.B. CREIGHTON et al., Appellees.
No. 310.
District Court of Appeal of Florida. Second District.
March 21, 1958.
Rehearing Denied April 16, 1958.
Paul Game, Tampa, for appellants.
Charles F. Blake, Tampa, for appellees.
ALLEN, Judge.
This is an appeal from an order dated April 24, 1957, which dismissed a complaint in chancery for declaratory decree by L.J. Batman and wife against J.B. *588 Creighton et al. The purpose of the suit was to have certain restrictive covenants held inoperative. Testimony was taken before the lower court and at the conclusion a decree was entered adverse to the plaintiffs.
The complaint alleged, in effect, that all the parties, except the defendant corporation, owned property in East Suwanee Heights Subdivision in Tampa; that certain restrictive covenants had, around 1913, been placed in the deeds of such property to the parties' respective predecessors in title by defendant corporation, the developer of said land; that plaintiffs' deed did not contain such covenants; that all pertinent covenants had, by their own terms, expired; that by reason of a change of conditions, to-wit: change in the nature and amount of traffic over Hillsborough and Central Avenues in Tampa, said covenants should no longer be enforceable; that the city zoning ordinance permits light commercial use of plaintiffs' property; and that plaintiffs have contracted to and have obtained required city permits to build a service station on their property. The complaint then sought to have said covenants declared void and of no effect.
The able chancellor, who personally heard the evidence in this case, in his order of dismissal made a complete determination of facts from which we quote:
"The map or plat of East Suwanee Heights Subdivision was filed of record by the owners of the land in the year 1913 and the sale of lots thereupon commenced and continued until the subdivider and its successors completed sale of all the lots in or about the year 1925. One or more lots were sold to individuals and practically all the lots are now occupied by residences except two or three on the corner of Nebraska and Hillsborough Avenues devoted to business purposes. One of plaintiffs' lots, which is vacant, is located on the corner of Hillsborough and Central Avenues.
"Nebraska and Florida Avenues have long been the main north and south traffic arteries for ingress and egress northwardly into and out of the city. The development along these streets is now largely commercial. Hillsborough Avenue, running east and west between Nebraska and Florida Avenues, has no property on it devoted to commercial use except the corners at the intersections of it with Florida Avenue on the west and Nebraska Avenue on the east. In order to widen Nebraska Avenue to its present width it was necessary to cut off fifteen feet of the front of the lots of the subdivision bordering on that street, thereby reducing the depth to that extent. There are, however, several residences on the lots fronting on this street and a few vacant ones. The two lots of the subdivision lying at the intersection of Hillsborough and Nebraska Avenue are now used for filling stations, the restrictions having been removed in an uncontested action brought in this Court for that purpose some years ago, thus permitting them to be used for such purposes.
"East Suwanee Heights is one of four contiguous subdivisions all with somewhat similar restrictions, which were subdivided, developed and sold during and following the years of its sale and development. Each of the subdivisions comprise approximately forty acres and the composite square area of the four of them front one-half mile on Nebraska Avenue on the east and one-half mile on Florida Avenue on the west, and the area is bisected east and west by Hillsborough Avenue and north and south by Central Avenue. There are also extensive residential sections bordering the north and south lines of this area. *589 These companion or continguous subdivisions to East Suwanee Heights, along with it, have maintained largely the integrity of their restrictions with the exceptions of lots fronting on Nebraska and Florida Avenues. On those two streets the property is, and has been for many years, largely devoted to commercial use. We find that the integrity of the restrictions have been maintained particularly along the bisecting streets of Central and Hillsborough Avenues. Such being the existing development of the area and its presently constituted use, the plaintiffs in their bill and proof must rely principally on the increase in traffic over Hillsborough and Central Avenues to obtain relief from the restrictions. The evidence shows the traffic is very much heavier on Hillsborough Avenue than on Central Avenue.
"Plaintiffs purchased the two lots in question in the years 1942 and 1947, respectively. Their residence on the lot next to the corner fronts on Central Avenue and is therefore some fifty feet or more from the corner of Hillsborough and Central Avenues. In those years both Hillsborough and Central Avenues were already arteries of heavy traffic although the traffic then was comparatively small as compared with present traffic, all of which appears from the evidence. The Court is called upon to determine if there has been such change of conditions as to warrant removal of the restrictions.
"Clearly the invasion of the subdivision by commercial use of Nebraska and Hillsborough Avenue corner lots and a like use of those corner lots on Hillsborough and Florida Avenues, furnish no sufficient basis for relief, nor is the commercial use of two or more lots fronting on Nebraska Avenue sufficient basis for such relief. Plaintiffs' testimony that the noise from the heavy trucks stopping at and passing along Hillsborough Avenue at its intersection with Central Avenue is so heavy that they have difficulty sleeping or resting at certain hours during the night is sharply disputed by occupants of houses situated as close or closer to Hillsborough Avenue in the immediate vicinity of this corner. * * *.
"The charge that Central Avenue in the near future may become a through north and south highway requiring the widening of that street as well as Hillsborough Avenue, has not been considered in the determination of the cause. When such conditions have been realized they may or may not bring about such change of circumstances that may require a different ruling than that made here."
The covenants in question read as follows:
"As part consideration for the purchase price for said property said second party hereby covenant and agree as follows: This conveyance (sic) is made by the party of the first part and accepted by the party of the second part under an agreement that the property hereby conveyed is to be used for residence property only; that only one residence shall be erected on each lot, and said residence shall face West and shall not cost less than $2,500.00, but the owner of said lot may have the necessary servant and outhouses on the rear of said lot; that the building line of said lot shall be twenty feet or more from the front of said lot; that no liquor or ardent spirits are to be sold upon this property for a period of twenty-one years, that this property shall never be rented, sold or otherwise disposed of to persons of African descent; no use shall be made of said property or any part thereof, that would constitute a nuisance or injure the value of any neighboring lot."
The appellants in their brief state the following questions:

*590 "1. Do the restrictive covenants contained in the deeds whereby the subdivider conveyed the two lots now owned by the Plaintiffs inure to the benefit of other property owners of the subdivision, or were such covenants for the exclusive benefit of the grantor and therefore did not create in the owners of other lots in the subdivision any right to enforce such restrictive covenants?"
It was the view of the chancellor that the covenants were for the benefit of all the grantees and they could enforce them. The following Florida cases sustain the opinion of the lower court, with which we agree.
In the case of Stephl v. Moore, 1927, 94 Fla. 313, 114 So. 455, the Court, in upholding the restrictive covenants involved in that suit, said:
"Covenants restraining the free use of real property, although not favored in law, will be enforced by the courts when the restriction applies to the location of buildings to be erected on the land, and such restrictions are carried in all deeds with a view to preserve the symmetry, beauty, and general good of all interested in the scheme of development. The benefit of restrictive covenants inures to each purchaser, irrespective of the time of purchase. Mayes v. Hale, 82 Fla. 35, 89 So. 364; Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L.R. 1127; Pearson v. Stafford, 88 N.J. Eq. 385, 102 A. 836; Bowen v. Smith, 76 N.J. Eq. 456, 74 A. 675; Bacon v. Sandberg, 179 Mass. 396, 60 N.E. 936; Zipp v. Barker, 166 N.Y. 621, 59 N.E. 1133."
In the well considered case of Osius v. Barton, 1933, 109 Fla. 556, 147 So. 862, 868, 88 A.L.R. 394, the Court, after discussing the development and growth of covenants of the type impressed upon the land involved in that suit and their enforceability, said:
"The two most thoroughly developed theories are: First that these restrictions are enforced as contracts concerning the land; and, second, that they are enforced substantially as servitudes or easements of land. The theory adopted in this state is that the contract which embodies the restriction may be enforced against both the promissor and those taking from him with notice, thereby including amongst those who may enforce the obligation not only the promisee, but those who take from him and those in the neighborhood who may be considered as beneficiaries of the contract."
In the very recent case of Tolar v. Meyer, Fla.App. 1957, 96 So.2d 554, 556, decided by the Third District Court of Appeal, an action had been brought by the owner of record to enjoin defendants from using land purchased by them for a church site. From an adverse decree the defendants appealed. The District Court held that the fact that the owner-subdivider of the property had relinquished its right of reversion and had executed written statement consenting to change of county zoning ordinance to permit defendants to use the property for a church site, did not have the effect of abrogating restrictive covenants of record and did not bind or waive rights of other parties to agreement creating restrictive covenants.
The Court, in its opinion, said:
"It becomes apparent from the facts that the appellant Ayers, as Trustee, at the time he received his title had constructive notice if not implied actual notice of the restrictive covenants; constructive notice by reason of the recordation of the agreement of November 13, 1950, and implied actual notice because of the statement contained in their deeds of conveyance. Allen v. Avondale Co., 135 Fla. 6, 185 So. 137; Vetzel v. Brown, Fla. 1956, 86 So.2d 138.
* * * * * *
"Appellants have strongly urged in their brief and before the Court that *591 no privity or contract existed between the present owners of properties in the subdivision in question and the makers of the original agreement imposing the restrictive covenants. This contention appears to have been answered adverse to the appellants by the holding of the Supreme Court of Florida in the case of Osius v. Barton, 109 Fla. 556, 147 So. 862, 88 A.L.R. 394, and recently affirmed in Vetzel v. Brown, supra."
Since appellants seriously question the propriety of the rule as stated by the above cases, and in fact question whether or not such cases state the Florida law, we note that the rule as given is in accordance with the texts on the subject.
Flick, Abstract and Title Practice, Chapter 5, Section 501, page 312, states the rule as follows:
"Whenever city property is subdivided and platted into blocks and lots, the subdivision is usually made subject to such restrictions as may be decided upon for the improvement and development of the property. These mutual covenants among the various owners of the lots of the subdivision are for the benefit and protection of all the purchasers in the subdivision. The restrictions are enforceable either by an action in equity to restrain violation, or by an action for damages for violation, provided that such restrictions are construed by the courts as `covenants', or there may be a forfeiture of the deed and a reversion of title in case of violation, if the restrictions contain what is known in law as a `condition subsequent'. The Courts, wishing to avoid a forfeiture whenever possible, are in favor of covenants rather than conditions subsequent.
"When restrictive covenants are placed in deeds by a common grantor, it is sometimes provided that an action may be maintained by any other grantee of the original grantor, but in some instances this clause is omitted. Whether or not the clause is omitted a grantee may maintain an action in equity to restrain the violation of such restrictive covenants. The general rule is that where a deed contains a restrictive clause executed in pursuance of a general scheme for the purpose of preserving the character of real estate as a first class residence property, such restriction will be held to create an equitable servitude in favor of all the property included within the general scheme."
2 Patton, Titles, Sec. 606, p. 566, states the following:
"* * * An action to restrain a breach may be maintained by the grantor in whose deed the covenant appears, so long as by ownership of some portion of the tract out of which he has made conveyance, or otherwise, he retains a substantial interest, rather than a merely nominal interest, in enforcement. A breach may be restrained by his grantee or other assigns of the land for whose benefit the restrictions were created, provided it is fairly clear that the restrictions were imposed for their benefit as well as for that of the original covenantee. For instance, when it is apparent that restrictions were imposed as part of a general plan for a restricted residence district, each grantee of any part of the land involved in the plan is a beneficial owner of the right of enforcement, and a deed from the original grantor alone will be ineffectual as a release. * * *"
Then, in Vol. 2, Sec. 347, p. 144 of the last cited work, the following appears:
"It is equally true that restrictions which create a burden upon or a benefit to the land are not merely the personal covenants of the grantee, but that they are real covenants, which become appurtenant to, run with, and bind the land. If they contain no express or implied provisions for reversion, or for a limitation over in case of breach, but *592 merely show an intent to regulate the mode in which the grantee may use and enjoy the land, they run with the land as restrictive covenants only, but do not amount to conditions. Common examples of these are the milder forms of building, racial, and liquor clauses. Enforcement is by injunction, at the instance of the original grantors, or of parties to whom they have conveyed other property, for the benefit of which the restrictions were imposed. There is also a remedy by an action for damages, but it is seldom employed."
8 Fla.Jur., Covenants and Restrictions, § 28, p. 524, reads as follows:
"Generally; Building Plans.  The sections in this subdivision are concerned with the validity and construction of restrictive covenants as applied to buildings and businesses. The enforcement of such covenants is discussed in a subsequent subdivision.
"Where building restrictions have been embraced in covenants running with the land, and it is further made to appear that such restrictions were made by a common grantor for the benefit of all the owners of lots in the subdivision, it is not necessary that there be any uniform plan for the development of the subdivision, in order to render the restrictions enforceable at the suit of a lot owner otherwise shown to have an interest in the enforcement thereof; a uniform plan of development is not a sine qua non for sustaining the validity of building restrictions per se. However, the presence or absence of such a uniform plan may in many cases be the main factor by which the beneficial interest of a complainant asking for the judicial enforcement of such restrictive covenants is to be determined when it is not otherwise apparent; proof of a general scheme or plan for the improvement of property, as a prerequisite to the rights of grantees from a common grantor to enforce, inter sese, covenants entered into by each with, or through, the grantor, is only required to show that the covenant sought to be enforced has entered into the consideration for the grant of the title, and is therefore such as should be exacted from each purchaser for the benefit of all purchasers."
8 Fla.Jur., Covenants and Restrictions, § 29, p. 526, reads as follows:
"Restrictions as to Residence Purposes.  Covenants in deeds frequently place restrictions upon the use to be made of property, as where it is provided that property conveyed is to be used for `residence purposes only'. In such instances, the word `only' is synonymous with the word `solely,' or the equivalent of the phrase `and nothing else,' and when so employed and understood, it necessarily excludes all uses of the property other than for residence purposes, and the interposition of other negative terms specifically prohibiting the use of the property for business, mercantile, or other similar purposes is unnecessary.
"So long as property restricted to use for residence purposes is in good faith used for such, it may also be used to a minor extent for the transaction of some classes of business or the following of some professional pursuits, provided the latter use is in fact casual, infrequent, or unobtrusive and results in neither appreciable damage to neighboring property nor inconvenience, annoyance, or discomfort to neighboring residents. This additional use must be so reasonably incidental to the prescribed use and such a nominal or inconsequential breach of the covenants as to be in substantial harmony with the purpose of the parties in making the covenants, and without material injury to the neighborhood. Where one claims that a complainant will not be injured by the alleged breach of a covenant *593 restricting the use of property to residence purposes only, the evidence must comprehensively and convincingly sustain that assertion.
"Restrictive covenants in a deed providing that the property conveyed may not be used for a mercantile establishment, and that buildings erected for residential purposes are subject to the approval of the grantor, are separate and independent covenants."
Also, 8 Fla.Jur., Covenants and Restrictions, § 38, p. 536, reads as follows:
"Necessity for Notice.  Restrictive covenants are only enforceable against those who have notice of such restrictions; those purchasers with notice of such restrictions are bound in equity thereby, and purchasers of property are held to have notice of the restrictive covenants contained in the deeds. Moreover, a purchaser in whose chain of title a deed appears which contains the restrictive covenant is chargeable with notice from the record, even though the restrictive covenant does not appear in his immediate deed, although where a deed does not include or refer to the restriction or to any document or record containing it, and the restriction is not contained or referred to in any muniment of title or on the plat of the subdivision or otherwise to afford binding constructive notice to a purchaser, the restriction will not be enforced. And even though there are restrictive covenants in some of the deeds to property conveyed in a subdivision, such covenants do not apply to other property in the subdivision conveyed without such restrictions, where there are no restrictions indicated by the plat or otherwise by anything in the record showing that the promoters and owners of the subdivision intended a general plan to burden the subdivision with restrictions."
The appellants contended before the lower court, as they do before this court, that the restrictions were limited to twenty-one years. The decision of the lower court was adverse to this contention of the appellants and we concur in the view of the chancellor. It will be observed from a perusal of the paragraph in this opinion which shows the covenants involved in this suit, that the limitation of twenty-one years appears as follows:
"* * * that no liquor or ardent spirits are to be sold upon this property for a period of twenty-one years, that this property shall never be rented, sold or otherwise disposed of to persons of African descent; * * *".
Preceding the above were two other phrases which restricted use of the land to residential purposes and which provided set-back lines. Following the above was one other phrase prohibiting any use of the land which constitutes a nuisance. All of these phrases, except one, were separated by semi-colons. The exception was that the "liquor" phrase was followed by a comma. We believe that the plain wording of these restrictions show that the twenty-one year limitation does not apply to the covenant that relates to the use of the property for residential purposes only.
We also concur in the view of the chancellor wherein he states in his opinion:
"The charge that Central Avenue in the near future may become a through north and south highway requiring the widening of that street as well as Hillsborough Avenue, has not been considered in the determination of the cause. When such conditions have been realized they may or may not bring about such change of circumstances, that may require a different ruling than that made here."
Questions 3 and 4 of the appellants' are as follows:
"Has a reasonable time expired since the restrictions were imposed in the year 1913, for the duration of the right of enforcement of the restrictions?"

*594 "Does the evidence show such a change in the conditions surrounding Plaintiffs' property as would justify the nullification of the restrictions to the extent that they prevent the construction of a filling station on the property?"
The Supreme Court of Florida in the case of Wahrendorff v. Moore, Fla. 1957, 93 So.2d 720, 721, had before it a case very similar to the one now on appeal to this court. In the opinion by Mr. Justice Thornal the following pertinent language appears:
"Appellants allege in their complaint that over the years conditions had so changed that the restrictions had become an unjustifiable burden on the use of their lot. In the meantime, the County Zoning Board has zoned the lot for business uses. To support the alleged changed conditions appellants cite the general development in the area, the tremendously increased traffic on U.S. Highway 1 and the fact that a motel has been constructed in violation of the restrictions in Block 1 of the subdivision. Block 1 is north of the Bird Farm and the motel is in the northwest corner of the Block.
* * * * * *
"* * * Conditions, reservations and restrictions shown on the face of the recorded plat are notice to subsequent purchasers who accept conveyances based on the plat. 14 Am.Jur., Covenants, Conditions and Restrictions, Sec. 203, p. 615. Although we have never passed upon the point directly, we have in a number of cases construed deeds of conveyance in the light of provisions or reservations shown on the recorded plat of the subdivision involved. Hall v. Snavely, 93 Fla. 664, 112 So. 551; McCorquodale v. Keyton, Fla. 1953, 63 So.2d 906; Burnham v. Davis Islands, Inc., Fla. 1956, 87 So.2d 97.
"* * * In a case such as this the mere filing of the plat containing the restrictive covenants does not in and of itself subject the land to the restrictions of the covenants so long as the title to the property remains in the subdivider. However, upon a severance of title by the grant of one or more lots according to the plat and by reference thereto, the restriction then springs into existence and becomes binding as between the subdivider and his purchasers and as between the purchasers inter sese."
We take this case on appeal after the chancellor had heard all the evidence, determined the weight thereof, had observed the witnesses and determined the credibility of them and, therefore, was in a better position than this court to determine the questions of fact therein presented. We cannot say from the showing made that his decision was erroneous.
Affirmed.
KANNER, C.J., and SHANNON, J., concur.