## BABCOCK v. RED CATTLE COMPANY.

Circuit Court, Hendry County.

October 27, 1953.

114

Brunstetter, Waldin & Netter, Miami, for plaintiff.

William A. Sheppard of Sheppard & Woolslair, Fort Myers, for defendant.

LYNN GERALD, Circuit Judge.

This suit was set down for trial before me on September 7, 1953. For three days I personally heard the testimony of the parties and reviewed the divers exhibits of the parties and, in addition thereto, I am familiar with the general area of the land involved, having lived in this section of southwest Florida all my life and having many times hunted and fished the area affected by this litigation. This is a surface water case, that is to say, a case involving water coming from rainfall. It is not an isolated suit embracing only small tracts of land of the parties, as to which my ruling would have an effect largely between the parties themselves. On the contrary, I am fully cognizant that my ruling can affect not only over 5,700 acres of the plaintiff's land and over 27,000 acres of the defendant's land, but can also affect a large amount of the flat-lands in the 12th judicial circuit of this state. I have therefore considered my ruling with the gravity it justly deserves. From the evidence I find the facts in this case to be, as follows—

The plaintiff's land and that of the corporate defendant, as well as the land in the general area, was practically flat in its natural condition and remains so excepting as it has been changed by the hand of man. For illustration, it appears in the evidence that the fall of the land is less than one foot per mile in some parts of the general area.

Nature provided no rivers, creeks or streams in the area and nothing that could be termed a natural water course other than a gentle fall of the land together with sloughs, cypress heads, swamps, ponds, sandflats and like slight depressions in the land which tend to carry off surface waters in divers directions.

The source of surface water is almost exclusively from rainfall and the area is subject to periodic heavy rainfall, oftentimes torrential in character. Normally, there is a rainy season each year

beginning in the early summer and extending into the fall. Also, during the winter and spring months very heavy rains are sometimes had. During the rainy season, when the depressions in the land fill up, the rain water spreads over a wide area in a sheet-like manner, in all directions with little, if any defined course perceptible to the eye. This surface water remains on the land for extended periods of time.

There is no system of public drainage in the area, each property owner having provided his own protection against the surface water as his judgment dictated. Plaintiff complains of a dike erected by defendant during the early part of 1952. Before the erection of defendant's dike these events transpired—(a) a large land owner to the north and northwest of defendant's lands dug a substantial drainage ditch extending in a northwesterly direction for approximately 5½ miles and terminating in a low area about 1½ miles north of defendant's lands and about the same distance west of plaintiff's lands—which ditch inevitably increased the surface water burden of the area of its terminus, including the lands of plaintiff and defendant; (b) to the north of defendant's lands divers tracts were enclosed by substantial dikes erected by (or on behalf of) persons farming the land, and surface waters from within the diked areas were pumped out on to the undiked area—thereby further changing the natural conditions and increasing the surface water burden of the undiked area; and (c) the defendant, or its predecessor in title, endeavored, without success, to effectuate some system of co-operative drainage among the landowners of the area—and to this end had a survey made which showed a fall of the land along the north line of defendant's land from a point about 3 miles west of the west line of defendant's land to the saw grass country of the Everglades to the east. The Everglades or saw grass country lies only some 8 miles east of the east boundaries of the lands of the plaintiff and defendant. Several years after the survey, the efforts for co-operative drainage having failed, the defendant erected its dike in a west-east direction about 125 feet south of the north line of its land, paralleling the line of fall shown by the survey.

Within the last 7 to 8 years much land in the area has been developed for farm use. The highest and best use of most of the land in the area appears to be for seasonal truck crops—but if the land is not protected from surface waters it is useless for farming from a practical standpoint, since the hazard of crops drowning from surface water overflow is great. Plaintiff vigorously asserts that the ravages of surface waters have also seriously affected the use and value of a part of his land for pasturage purposes.

The property owners in the area (including the plaintiff) have recognized the necessity for diking and ditching the land in order to protect it from the ravages of surface water. Certainly insofar as using it for farm purposes is concerned, the area could well be termed reclaimed land when it is diked and ditched for protection against surface waters.

The evidence shows that the *plaintiff*, Babcock, has erected a substantial dike along the west boundary of his land in sections 27 and 34, township 48 south, of range 32 east, extending from the Devil's Garden or Indian Service road 2 miles south to a point approximately 170 feet north of the west-east dike of the defendant —and, at its southerly terminus, the plaintiff's dike turns east for about 1/3 mile, creating a corridor between parts of the lands owned by plaintiff and defendant. At the easterly terminus of the southerly line of plaintiff's dike it turns north. The effect of the plaintiff's dike is to deflect on to defendant's land some of the increased surface water burden on the land in the area resulting from the 5½ mile ditch and the diking and pumping mentioned in the preceding paragraphs.

Plaintiff asks this court to mandatorily require the corporate defendant to remove its dike, or such portions thereof as will relieve him of the injuries of which he complains. His position is inconsistent—he asks the court to restrain and prohibit defendant from doing the very thing he has himself done. Each has protected himself from the ravages of surface water as each determined best—which appears to be the established practice in the area. To say that the plaintiff can protect himself and at the same time tell the defendant that it cannot do likewise does not comport with the court's conception of justice.

The equities in this case are in favor of the defendant and against the plaintiff. It is ordered, adjudged and decreed that plaintiff's complaint be and it is dismissed, with prejudice.