175 So.2d 554 (1965)
ORTEGA COMPANY, a corporation, Appellant,
v.
Robert G. JUSTISS and Elzie H. Justiss, his wife, Appellees.
No. F-264.
District Court of Appeal of Florida. First District.
May 25, 1965.
*555 G.B. Stockton, Jr., of Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, for appellant.
Gregory J. Darby, Jacksonville, for appellees.
RAWLS, Judge.
Appellant-Plaintiff Ortega Company appeals the chancellor's order which denied its prayer for injunctive relief and transferred the cause to the law side of the court.
This controversy arose out of the sale of certain lots by Ortega to the Justisses. On October 30, 1947, Ortega Company, as vendor, entered into a contract with Robert G. Justiss, as purchaser, for the sale of Lots 3, 4, 5, 6, Block 1, and Lots 9, 10 and 11, Block 2, of Ortega's unrecorded plat of Yukon Subdivision located in the County of Duval. This contract contained the following restrictive covenants:
"1. Said lots shall not be owned or occupied by or encumbered to any person other than of the Caucasion race, except that bona fide servants of any race may occupy authorized servants' quarters on said lots.
"2. Said lots shall be used only for residential purposes and not more than one single family residence or one two-family residence and one outbuilding (either a private garage, servants' house or like outbuilding) shall be allowed to occupy any one of said lots at any one time, nor shall any building at any time situate on said land be used for business, amusement, charitable, or manufacturing purposes.
"3. No building or part thereof (except the outbuilding referred to above) shall be erected on any of said lots within twenty-five (25) feet of any street or within seven (7) feet of any adjoining lot.
"4. No outbuilding or part thereof shall be erected or placed on any of said lots within sixty (60) feet of any street or within five (5) feet of any adjoining lot.
"5. No residence shall be erected upon or allowed to occupy any of said lots unless the cost of such residence shall exceed Three Thousand Dollars ($3,000.00).
"6. Prior to the erection of a residence on any of said lots, not more than one garage, other outbuilding or trailer, used or to be used wholly or partly for residential purposes, shall be erected upon or allowed to occupy any of said lots, and said garage, outbuilding or trailer shall not be erected or placed thereon within one hundred (100) feet of any street. After a residence, as herein provided, shall have been erected on any of said lots, no trailer, used wholly or partly for residential purposes, shall be allowed to occupy any part of any of said lots.
"7. Said lots shall not at any time hereafter be used for the manufacture or sale of intoxicating liquors or for any illegal purpose.
"8. No building, fence or wall of any description shall be erected upon or allowed to occupy any of said lots until the plans of such building, fence or wall and its location on said lots shall have been approved in writing by Ortega Company.
"9. Ortega Company hereby reserves for its exclusive use a free and perpetual easement over and under, *556 and right of entering upon and using a strip of land four (4) feet in width at the rear and sides of said land for placing or constructing and maintaining facilities or appliances for power, water, telephone, telegraph, gas, lighting, heating, drainage, sewerage, and all other public utilities. No bamboo shall be planted or construction of any kind, be erected or placed on, over, or under said reserved strip, and deed thereto shall not convey any right, title, or interest in or to any equipment or appliance now or hereafter placed on, over or under said reserved strip.
"10. Ortega Company further reserves for its exclusive use a free and perpetual easement over, under, upon, and across that portion of the above described land upon which are located existing water and sewer lines, for the purpose of maintaining, repairing, and servicing said water and sewer lines, said easement being limited to a strip of land ten (10) feet in width, measured five (5) feet on each side of the center line of such existing water and sewer lines, and deed thereto shall not convey any right, title, or interest in or to any equipment or appliance now or hereafter placed on, over or under said reserved strip.
"11. Covenants one (1) to ten (10), both inclusive, as set forth above, shall remain in force and effect until January 1, 1970, and until said date shall be deemed to be covenants running with the title to said land, but Ortega Company may, from time to time, by sealed instrument, release said premises or any portion thereof from any or all of said restrictions."
A warranty deed to the Justisses conveying the above described lots was executed by Ortega on the 22nd day of January, 1953. It did not include the first restrictive covenant concerning the Caucasion race, and it established a minimum cost of $3,000.00 for the construction of a residence on any one lot; otherwise the same covenants contained in the contract were set out in the deed.
Ortega established its case by placing into evidence the original contract, a copy of the deed, correspondence between the parties, interrogatories and answers thereto, and a copy of the plat of Yukon Park, all of which provided: (1) The covenants set out above, and (2) A violation of same by defendant prior to May 15, 1958, by placing more than one trailer on each of the lots and operating a commercial trailer park on the premises.
The chancellor found inter alia "* * * from 1958 to the date of the institution of this suit on April 18, 1963, the plaintiff wrote several letters to the defendant, first permitting the use of the property for the purpose specified above, but then calling upon the defendants to cease and desist in such activities. The defendants, on the other hand, acknowledged their violations, requested continued forebearance and finally requested cancellation of the restrictions."
Robert Justiss conceded that he had violated the restrictive covenants by operating a commercial trailer park on the lots. He defended upon the grounds of laches, acquiescence, and abandonment of the covenants, all of which he theorized constituted an estoppel against Ortega as to enforcement of the covenants and in addition asked the court to cancel the said covenants. Justiss's defense was based primarily upon his own testimony, the testimony of Admiral Stockton, President of Ortega, called under the adverse witness rule, and a number of photographs. In order to fully evaluate the testimony of the witnesses and understand the "on the ground" application of the *557 covenants involved, an examination of the plat of Yukon Subdivision is of assistance. A sketch based upon plaintiff Ortega's Exhibit 4 is as follows:

The substance of Admiral Stockton's testimony is that: The Yukon plat contains no covenants or restrictions on any of the lots; all of the lots facing Yukon Road and 120th Street were zoned business and all other lots were zoned residence "B";[1] the lots owned by Ortega are not restricted by the plat or deed in any manner; the owner of Lot 2, Block 2 is now violating a similar covenant prohibiting more than one trailer on that lot, but he had promised to remove the offending trailers; a new restricted development known as Ortega Harbors, Inc., is improving for residential purposes the area north of Lots 5, 6, 7 and 8 still owned by Ortega; in 1958 Admiral Stockton first learned that Justiss put trailers on the lots and wrote him a letter advising him that such action was a violation of Covenants No. 1 and 5; and Justiss then pleaded with him not to disturb the operation because the Navy was going to condemn all the property.
Justiss testified that: In 1945 he purchased 100 feet in the area identified as not included in the plat and there exists on this property an old store building which is now vacant except for that portion which he converted into three apartments. He had some trailers on the lots described in the contract prior to the deed being executed, and he talked to a Mr. Parker "that kind of runs things for them (Ortega)" about putting *558 trailers on these lots around 1954 or 1955. Subsequent to his buying the lots a grocery store was built on Lot 8, Block 1, which store has gone out of business and is now used to store goods. A Mr. Fedor owned Lot 1, Block 1, on which he moved a 16 by 16 "Blanding building" partly on lot one and partly out in Alden Street and used same for his residence for four or five years until his death, at which time it was demolished. Justiss later bought the Fedor property which was improved with a 20 X 30 concrete block commercial type structure. Subsequent to his purchasing the lots from Ortega, a junkyard for cars developed on the western one-third of that portion shown as not included in the plat, and Justiss constructed a building containing three apartments on Lot 3, in Block 1,[2] but he has encountered difficulty in renting these apartments because the area is not suitable for residences. A considerable change occurred during the five years he was paying for these lots. Dewey Park which consisted of buildings known as flattops and duplexes located west and southwest of Block 1 of Yukon Subdivision, had been demolished by the Navy and nothing exists there now, but old weeds. Justiss contacted Mr. Parker and Admiral Stockton a number of times in an effort to get the restrictions lifted. Lot 2, Block 2 contained four or five repaired trailers in violation of covenants similar to those set out above. He was not able to procure FHA approval for construction of residences on the lots purchased. Justiss introduced photographs into evidence which depict a run down area not suitable for residential development. So, the restrictive covenants with which we are here concerned apply only to the 7 lots purchased by Justiss and to Lot 4, Block 1 owned by a third party, which lot contains the only single family residence in what apparently started out in 1947 as a highly restrictive subdivision.
The chancellor concluded in his decree that the foregoing facts were not sufficient to sustain defendant's defense of laches nor did they constitute an adequate basis for the imposition of an estoppel. He also found that defendant did not sustain the requisite burden of proof to show such a change of conditions as would justify a cancellation of the restrictions.
With the foregoing summary of the evidence and actions of the chancellor in mind, we now consider Appellant's sole point on appeal, viz.: The Court erred in failing to enjoin the appellees' use of the property as a trailer park by erroneously applying the doctrine of comparative injury or balance of conveniences. Thus, appellant takes the position that he is entitled as a matter of right to a particular form of relief, i.e., a mandatory injunction. We do not agree. Ortega relies principally upon the cases of Stephl v. Moore,[3] Vetzel v. Brown,[4] and Daniel v. May.[5] In the Stephl case, the defendant admitted violating setback restrictions provided in the deed, and the chancellor granted injunctive relief. The Supreme Court in upholding the chancellor, noted that such restrictions were carried in all deeds with a view to preserve the symmetry, beauty and general good of all interested in the scheme of development. The Vetzel case concerned restrictive covenants placed in a deed as a result of an agreement between common grantors for the orderly development of a subdivision. Vetzel entered suit seeking the cancellation of the covenants contained in their deed restricting the use of the lots purchased to residential purposes. The chancellor found against Vetzel and his decree was *559 affirmed by the Supreme Court. Justice Roberts, speaking for the court, stated:[6]
"For we are not here concerned with a suit at law on the covenant; we have here a suit, in equity, by remote grantees against other grantees from a common grantor, to be relieved of restrictions as to use placed upon their land by their common grantor for the benefit of all of the grantees of such common grantor, and as a part of a general scheme of development and improvement of the lots owned by her and an adjoining land owner." (Emphasis supplied.)
Violation by the grantee of a deed containing a setback covenant by a common grantor was the subject matter of Daniel v. May. There plaintiffs sought a mandatory injunction for the removal of that portion of a dwelling in violation of the covenant. Defendants filed an answer, but upon summary judgment proceedings did not come forth with an affidavit or evidence of any kind in opposition to the summary decree motion. The chancellor entered an injunction requiring the removal of the offending carport from within fifteen feet of the side line of plaintiffs' lot. In sustaining the injunction, the District Court of Appeal cited well settled legal doctrines pertaining to the issuance of injunctions enforcing restrictive covenants and observed that a court of equity may "compel the undoing of a thing already done in violation of a restrictive agreement * *", "* * * that an injunction against violation of restrictive covenants may be granted although there is no showing of irreparable injury * * *" and that "* * * [t]he court will not ordinarily take into consideration the relative amount of inconvenience or injury to be suffered by the parties in case the injunction is granted or refused * * *." An analysis of these cases discloses that in two of the cases examined, the appellate court sustained the discretion exercised by the chancellor in granting the injunction whereas here the chancellor refused injunctive relief. Next, in each of said cases, the restrictive covenant had as its objective a general plan of development for the mutual benefit of all lot owners. Here, the adjoining lot owners acquired no rights of enforcement as to each other nor was there any general plan of development, for Ortega reserved unto itself the unilateral right to at any time cancel any one or all of the restrictive covenants and further, did not make the lots owned by it and which are interspersed throughout the subdivision, subject to said covenants. We are here confronted with a contract between two parties which does not confer any rights to adjoining property, including that of the one residence in the entire subdivision. By the explicit terms of the contract, Ortega may at any time cancel the restrictions contained in the deed. Covenants of such nature fall within the doctrine stated by our Supreme Court in Sinclair Refining Co. v. Watson,[7] as:
"While covenants restraining the free use of real property are not favored, * * * the public policy of this state * * * favors the fullest liberty of contract and the widest latitude possible in the disposition of one's property, so long as no disposition is sought to be made contrary to public policy or express law and so long as the restraint is within reasonable bounds."
In the instant cause, the able chancellor held that the covenants are enforceable, but denied the form of relief sought by Ortega.
In the subject order transferring the case, the chancellor made extensive findings of fact and applied the doctrine of comparative injury or balance of conveniences as set out in 17 Fla.Jur., Injunctions, Sections 24 and 25, pages 389 and 390, viz.:
"Situations may exist that require application of the principle of balancing *560 the relative conveniences of the parties, the rule being that equity will not require by injunction the performance of an act where the harm to the person coerced is wholly disproportionate to the benefit to the other party, or, indeed, when greater injury and inconvenience will result to the defendant from an injunction than will be caused to the plaintiff by its refusal.
* * * * * *
"In view of the drastic character of mandatory injunctions, the rule about balancing the relative conveniences of the parties applies with special force where mandatory injunctive relief is sought. Thus, if the cost of removal of an encroachment is great and the corresponding benefit to the adjoining owner small, such relief will be denied. The complainant will be left to his remedy at law."
See also 12 Fla.Jur., Equity, Section 12, page 146, where it is stated:
"A court of equity is a court of conscience. Generally, it may be stated that relief will not be granted where it would be inequitable, unfair, or unjust. Thus, whether or not it will lend its aid is, in many cases, a matter of the exercise of sound judicial discretion. This fact is exemplified in several of the equitable maxims. The specific performance of a contract is not a matter of right in either party, but rests in the exercise of judicial discretion. Likewise, the granting or continuing of an injunction is discretionary, and depends on a balancing of the equities."
Although the doctrine of balancing the relative conveniences of the parties has been applied most generally in cases involving encroachments, the rationale of the decisions make application of the doctrine equally applicable to cases involving violation of restrictive covenants.
As stated above, defendant purchased the lots in question from plaintiff in the year 1947. Sometime during the years 1953 to 1955 defendant commenced utilizing parts of his seven lots for the rental of space to house trailers. Commencing in 1955 defendant entered upon a program of subdividing his seven lots into thirty-seven trailer spaces, each having an area of approximately thirty-five feet by fifty feet. In this connection defendant hauled in fill dirt which he used to raise and level the trailer spaces being developed by him and installed sewerage, water, and electricity to each of thirty-four trailer spaces. Defendant testified that his cost in developing each trailer space was approximately $700.00 to $800.00. From 1955 to 1961 plaintiff acquiesced in defendant's violation of the restrictive covenants by devoting the use of his property to that of a trailer park. During this six-year period plaintiff, through its agent Parker, was intimately acquainted with defendant's activities and with the amount of money he was spending in developing his seven lots into thirty-seven rentable trailer spaces. Defendant's development and use of his property in violation of the restrictive covenants was under circumstances which justified the hope and expectation that at an appropriate time plaintiff would agree to release his land from the covenants, even though such belief proved to be ill-founded and mistaken. It thus appears that defendant did not willfully or tortiously violate the restrictive covenants in his deed, nor were his acts in developing and using his property as a trailer park done in defiance of his contractual obligations to comply with the covenants. To grant the mandatory injunction sought by plaintiff would cause defendant to sacrifice the substantial investment he has made in the improvement of his property, while at the same time would result in little apparent benefit to plaintiff. It is for these reasons that the doctrine of balancing the relative conveniences of the parties permitted the chancellor to deny the mandatory injunction sought by plaintiff.
Although the chancellor found that the facts as he construed them did not *561 amount to laches or estoppel on the part of Ortega, there was sufficient evidence of laches together with changes in the use of surrounding property which he properly considered in applying the equitable doctrines quoted in his order. Bearing in mind the discretionary character of injunctive relief, it is our conclusion that the record herein amply supports the order transferring this case to the law side of the court to allow recovery by plaintiff of such damages as it may be able to establish arising from defendant's breach of restrictive covenants.
Affirmed.
STURGIS, C.J., and WIGGINTON, J., concur.
NOTES
[1] No evidence was adduced reflecting any complaint or action by the zoning authorities as to violations of the zoning code.
[2] This was a violation of the covenants of which no complaint has been lodged by Ortega.
[3] Stephl v. Moore, 94 Fla. 313, 114 So. 455 (1927).
[4] Vetzel v. Brown, 86 So.2d 138 (Fla. 1956).
[5] Daniel v. May, 143 So.2d 536 (Fla.App.2d 1962).
[6] Vetzel v. Brown, supra, 86 So.2d at 140.
[7] Sinclair Refining Co. v. Watson, 65 So.2d 732, 733 (Fla. 1953).