355 So.2d 847 (1978)
James PILAFIAN and Shocky Pilafian, His Wife, Appellants,
v.
Robert L. CHERRY and Mary H. Cherry, His Wife, Appellees.
No. 76-1944.
District Court of Appeal of Florida, Third District.
March 7, 1978.
*848 Jack R. Rice, Jr., Miami, for appellants.
Kenneth H. Smith, Tavernier, for appellees.
Before PEARSON, NATHAN and HUBBART, JJ.
PER CURIAM.
The trial judge has given us the benefit of extensive findings of fact in the final judgment, which is as follows:
* * * * * *
"1. The Court has jurisdiction of the subject matter and the parties.
"2. Plaintiffs and Defendant ROBERT L. CHERRY own adjacent lots in a subdivision known as First Addition to Pirates' Cove, recorded in Plat Book 3 at Page 87 of the Public Records of Monroe County. Their common boundary line is located at the southeast corner of a body of water known as Barataria Lake.
"3. Plaintiffs and Defendant ROBERT L. CHERRY purchased their respective lots subject to restrictions common to all properties therein, including paragraph 10, which provides:
`10. No dock, wharf or other projection shall be constructed or erected on, along or over lots fronting on any channel, which shall project into the channel beyond the water front line of said lot or lots as shown and delineated on the recorded plat ...'
"4. That sometime during the summer of 1973 Defendant ROBERT L. CHERRY commenced construction of a seawall and dock on his lot, lot 23, block 19, and that prior to construction he knew that his platted boundary line was landward of the navigable water adjacent to his lot.
"5. After initial efforts to excavate the area between navigable water and the property line failed because of large boulders and bedrock which could not be readily removed, Defendant ROBERT CHERRY had a seawall constructed which was seaward of his lot line 1.55 feet at the southern end (the end adjacent to the parties common boundary) decreasing along a 40 foot line to .5 feet at the northern end. A dock was constructed on top of the seawall which extends seaward from the seawall an additional 1.4 feet at the southern end to 1.45 feet at the northern end. (See Plaintiffs' Exhibit No. 10)
"6. No part of Defendant's dock or seawall extends over the projection of *849 the parties' common boundary line. (See Plaintiffs' Exhibit No. 10)
"7. Sometime in January 1972 (prior to the time Defendant's dock was built) while Plaintiffs were negotiating to purchase their lot, lot 24, block 19, a dock was constructed on Plaintiffs' lot which extends seaward from the platted boundary line approximately 12 inches on the east end decreasing along a 20 foot line to approximately 5 inches at the west end. Said dock is still existing. (See Defendant's Exhibit No. 3)
"8. The deed restrictions as set forth in paragraph 3 hereinabove apply to the Plaintiffs and Defendant ROBERT L. CHERRY.
"Having found that the Plaintiffs and Defendant ROBERT L. CHERRY are bound by the restrictive covenants as set forth in paragraph No. 3 above and understanding that the law of Florida is that injunctive relief is available to enforce restrictive covenants (see Stephl v. Moore (Fla. 1927) [94 Fla. 313] 144 So. 455 and City of Miami v. Kline (Fla.App. 1966) 189 So.2d 503, this Court must also recognize the doctrines of `balance of conveniences' and `clean hands':
`Although the doctrine of balancing the relative conveniences of the parties has been applied most generally in cases involving encroachments, the rationale of the decisions make application of the doctrine equally applicable to cases involving violation of restrictive covenants. Ortega Company v. Justiss (Fla.App. 1965) 175 So.2d 554. Also see 17 Florida Jurisprudence, Injunctions, Sections 24 and 25, pages 389 and 390.
`One who seeks the aid of equity must do so with clean hands. 12 Florida Jurisprudence, Equity, Section 54, p. 211.'
"In the instant case Plaintiffs do not allege that they own the bottom land adjacent to their lot but that Defendant ROBERT L. CHERRY's dock deprives them of the use of a portion of 2.95 feet of the surface water seaward from the northeastern corner of their lot and because there is now a dock where previously rocks had protruded from the water 3 to 9 inches, their view is less pleasing. Plaintiff JAMES PILAFIAN testified he would like to purchase a 30 to 50 foot sail boat and moor it to his dock, but the evidence shows that because of the protruding rocks in the area over which the dock was constructed, the water was not navigable prior to the construction of Defendant's dock nor would it be navigable if the dock is removed. Plaintiffs also presented testimony concerning the value of their lot, but considering all of the evidence presented on that point, Plaintiffs have failed to establish that their property has diminished in value because of Defendant's acts. On the contrary, rather convincing testimony was presented which suggests that Defendant's dock increased the value of Plaintiffs' lot as well as Defendant ROBERT L. CHERRY's lot.
"On the other hand, the evidence indicates Defendant ROBERT L. CHERRY would suffer injury and inconvenience if a mandatory injunction were issued. The parties have stipulated that the cost of removal of Defendant's 40 foot dock would be $75.00 per foot. In addition, the practical result would be that Defendant ROBERT L. CHERRY's lot would end approximately one to three feet short of navigable water, which would greatly diminish the value of his property as well as effectively deny him what was intended by the restrictions  to permit riparian property owners in the subdivisions access to the waterways for fishing and boating in a manner which would not interfere with the same rights of other riparian owners.
"Therefore this Court finds that to grant the mandatory injunction sought by Plaintiffs would result in little apparent benefit to Plaintiffs but considerable cost and diminution of property value for the Defendant ROBERT L. CHERRY.
"Last, the Court must consider the doctrine of clean hands.

*850 `If the Plaintiff has previously violated the same restriction which he now seeks to enforce against the Defendant, the equitable doctrine of unclean hands is applicable and injunctive relief is usually denied.
`Difficulties are found in applying this doctrine when the complainants' breach was not as significant as the violation of the provision by the Defendant. If the violation by the Plaintiff was insignificant, he may still secure equitable relief so long as the Defendant's breach was substantial and defeats the main object of the restriction. If, however, the complainants' breach was substantial, even though not as pronounced as the Defendant's, the defense is normally good ... For the equitable defense to be effective, the complainant's violation must be one that exists when the relief is sought. Powell on Real Property, Volume 5, Section 683, pp. 226-7. Also see Babcock v. Red Cattle Co. (Cir.Ct. 1953) 6 Fla. Supp. 113, where the Court denied a complaint for mandatory injunction to prevent Defendant from obstructing surface waters where Plaintiff had done the same thing. Also Crowl v. McDuffie (Fla.App. 1961) 134 So.2d 542.'
"It is therefore
"ORDERED and ADJUDGED that Plaintiffs' prayer for mandatory injunction and Defendants' Amended Counterclaim for mandatory injunction are hereby denied."
We have considered each of the points addressed to the judgment and find that the judgment is well supported by the evidence. Therefore, we cannot substitute our judgment for that of the trial judge. No error of law appears.
Affirmed.
NATHAN, Judge, concurring in part, dissenting in part:
I concur with the holding of the majority opinion only in the result regarding the denial of relief by way of issuance of mandatory injunctions.
The record reflects that in spite of appellants' admonitions, appellee wilfully and deliberately violated the restrictions by extending the dock and bulkhead, thus, at least, marring the view of the appellants. I would, therefore, reverse the finding and judgment of the trial court as to damages, and remand for reconsideration even though such damages may be measured by aesthetic values.